244 So.2d 386 (1971)
Sarah C. McCORKLE
v.
Bobbye B. HUGHES.
No. 46048.
Supreme Court of Mississippi.
February 8, 1971.
Rehearing Denied March 1, 1971.
Davidson & Beach, Jackson, for appellant.
Satterfield, Shell, Williams & Buford, Cary E. Bufkin, Douglas R. Duke, Jackson, for appellee.
ROBERTSON, Justice.
The Circuit Court of the First Judicial District of Hinds County, after a separate and preliminary hearing, sustained the defense set up in the answer as a plea in bar. That defense was that the appellant, Sarah C. McCorkle, had knowingly and voluntarily executed a general release of all damages resulting from the accident.
On May 30, 1967, the appellant, 69 years of age, was injured in a motor vehicle accident involving her adult daughter's car and the automobile of the defendant, Bobbye B. Hughes, when her head hit the windshield and her left knee the dashboard.
Dr. M.B. Tumlinson, a general practitioner, treated appellant at the emergency room of the Baptist Hospital in Jackson. X-rays of the neck and knee revealed no fracture but did show a considerable amount of degenerative arthritis of the neck. Dr. Tumlinson prescribed muscle relaxants for the muscle spasms he found in the neck and shoulder. After several office visits, the last of which was on August 22, 1967, Dr. Tumlinson's final diagnosis was "a post-traumatic aggravation of a pre-existing degenerative arthritis of the neck." He referred her to Dr. William C. Warner, an orthopedic surgeon, who examined her on September 5, 1967, and rendered a written report to appellant's attorneys on July 31, 1968. Dr. Warner stated that x-rays revealed no apparent fractures but moderately severe degenerative arthritis of the cervical spine and degenerative disc disease. At his suggestion appellant received physical therapy *387 and her condition gradually improved. His final prognosis was:
"With the far advanced degenerative disc disease and arthritis, as well as osteoporosis, it is doubtful that she can be completely relieved of discomfort. Physical therapy and various medications can be of some help to her."
The appellant testified that about a week after the accident, Billy H. Stephens, who told her that he was an adjuster for the United States Fidelity and Guaranty Company, began to call on her and inquire as to her condition. Thereafter, he called regularly once or twice a week. At his instance, she secured a detailed medical report from Dr. Tumlinson on August 22, 1967, which she read and handed to Stephens. In this written report. Dr. Tumlinson reiterated his previous diagnosis and prognosis:
"Post traumatic aggravation of degenerative arthritis of neck which has not cleared at this time  much improved  Probably will continue to have permanent soreness in neck due to aggravation of pre-existing condition  "
Appellant testified that she had been on her own since her husband died in 1954; that she had two adult daughters who had worked for insurance companies for 18 years; that she had 3 1/2 years of college and work experience, which both the United States Government and the State of Mississippi recognized as the equivalent of a college degree. After the accident she continued to drive her own car and missed no time from work.
On August 23, 1967, when she came to work about 10:00 a.m., Mr. Stephens, the adjuster, was waiting for her. She gave him Dr. Tumlinson's report of August 22, 1967, and the complete file folder of her medical and hospital bills. He took the report and file folder to his office and returned in about an hour with a check for $137.75, the total of all of her bills. She asked about future bills, and was advised that this would be a final settlement.
She told Stephens that $137.75 was just not enough, that Stephens agreed with her, and told her that he would go back and "talk to my company". After lunch, Stephens returned to her office with another check for $400.00. He tendered these two checks totaling $537.75 to her, she accepted them and signed the general release reciting the consideration of $537.75 and dated August 23, 1967. Mrs. G.L. Therrell, a friend of Mrs. McCorkle's and Billy H. Stephens signed the release as witnesses.
On August 28, 1968, over a year after she signed the general release, Mrs. McCorkle brought suit against Bobbye B. Hughes for $35,000.00 damages.
In her answer, Bobbye B. Hughes set up as her first defense that:
"[O]n August 23, 1967, a settlement agreement was reached with the plaintiff whereby she was paid the sum of $537.75 for a full and final settlement of all her rights and claims, and, in consideration of such payment, plaintiff executed a release of the defendant and all others on account of the accident in question."
Appellant in her reply admitted that she signed the general release, but alleged that there was a mutual mistake as to the nature and duration of appellant's injuries.
She averred that she had additional injuries to her nervous system and nerve roots, and also severe muscle spasms; that $537.75 was so inadequate as to constitute a failure of consideration; that the person taking the release did not disclose his principal; that there was no meeting of the minds; and that the defendant's conduct (apparently through her agent, Mr. Stephens) constituted constructive fraud.
After Mrs. McCorkle had testified at some length, the trial judge ruled that he would hear the case only as to the validity of the release.
*388 When appellant finished her testimony, she called Dr. William B. Tumlinson as her witness. He testified that as he recalled the plaintiff wanted a written report of her condition "because the insurance company wanted to settle the case with her."
The trial judge allowed appellant to summarize for the record the testimony of Dr. William C. Warner, orthopedic surgeon, Dr. Charles L. Neill, neurosurgeon, and Larry Tuminello, physical therapist. Appellant placed in the record the written report of Dr. Warner and Dr. Neill. Dr. Neill, in his written report of August 1, 1968, said:
"It is my impression that she has a neuralgia type headache involving the 2nd cervical nerve root on the left side. This is post traumatic following the injury. I do not have any suggestions about managing it except to continue the use of the physiotherapy. In time there may be some improvement."
It is perfectly apparent from Dr. Warner's and Dr. Neill's reports that Mrs. McCorkle's injuries were correctly diagnosed by Dr. Tumlinson in his written report of August 22, 1967, which Mrs. McCorkle admitted reading before she signed the general release on August 23, 1967.
We think that the trial judge's ruling: that there was no mutual mistake, that the appellant fully realized what she was doing when she signed the general release, and that there was no fraud and no overreaching, was fully supported by the evidence; and that the court was correct in sustaining the defense in the nature of a plea in bar and directing a verdict for the appellee.
In Kohler v. Oliver, 114 Miss. 46, 74 So. 777 (1917), this Court quoted with approval from 5 R.C.L. 878:
"It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely scrutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration for such agreements is not only valuable, but highly meritorious. They are encouraged because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement." 114 Miss. at 48-49, 74 So. at 777.
Later, in Fornea v. Goodyear Yellow Pine Co. et al., 181 Miss. 50, 178 So. 914 (1938), this Court said:
"If the plaintiff signed the contracts involved in the above statements, knowing their conditions, and was not misled or deceived by fraudulent representations, he is bound by the written terms of the contract. While the law recognizes that there is no method known to the law by which to make people prudent, and that experience shows that people often imprudently make contracts, including the signing of releases, yet every person must be presumed to know the law, and in the absence of some misrepresentation or illegal concealment of facts, the person must abide the consequences of his contracts and actions.
"In the light of the fact that people are not prudent, and may at times be unjustifiably imposed upon, this court has been liberal in reviewing transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently about his contracts or other matters." 181 Miss. at 65, 178 So. at 918.
*389 We adopt the opinion in Pearson v. Weaver, 252 Miss. 724, 173 So.2d 666 (1965), wherein this Court said:
"In the case before us, the trial judge, when he sustained the plea in bar, necessarily found that there was no fraud or deceit and no misrepresentation as to other matters. There is no proof in this case of any confidential relationship between the parties. The trial judge further found that there was no mutual mistake of the contracting parties. We are of the opinion that the evidence justified such a finding. The trial judge also found that there was no such disparity in the mental condition of the parties as would justify the court to infer fraud in the procurement of the release. He considered all the contentions made by appellant on this appeal, and resolved them against appellant. We have considered these contentions in the light of the record and the excellent briefs in this case, and we cannot say that the trial judge was wrong in his decision. There is ample evidence to support his findings." 252 Miss. at 732, 173 So.2d at 669.
The judgment of the trial court is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and INZER, JJ., concur.