**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-CA-01581-SCT**

*CHANTEY MUSIC PUBLISHING, INC.*

*v.*

*MALACO, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2004 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MEDA BYRD LINDLEY |
| ATTORNEY FOR APPELLEE: | ROBERT A. MALOUF |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/01/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The Circuit Court of the First Judicial District of Hinds County entered a judgment enforcing the settlement agreement reached in a mediation conference between Chantey Music Publishing, Inc. and Malaco, Inc.   Feeling aggrieved from the entry of this judgment, Chantey appeals to us.  Finding the judgment of the Hinds County Circuit Court, Judge Winston L. Kidd, presiding, to be supported by the evidence and consistent with the applicable law, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     This litigation arises from a copyright dispute concerning six songs written by Tommy Tate, a contract song writer originally retained by Chantey Music Publishing, Inc.   Specifically, Chantey alleges that Malaco, Inc. interfered with its contractual relationship with Tate and caused it to suffer damages when Malaco hired Tate away from Chantey. Based on this alleged act of contractual interference, Chantey, in 1992, filed suit against Malaco, and the parties were actively engaged in pre-trial activities for the next two years until November of 1994, when Chantey inexplicably allowed the case to become dormant.   Seven uneventful years passed in the life of this civil litigation.   Finally, in October of 2001, Chantey filed a motion for summary judgment. In response to Chantey's motion, Malaco filed a motion to dismiss. Ultimately, the trial court denied both motions by order dated April 12, 2002.

¶3.     On May 24, 2002, the circuit court judge referred the parties to mediation, and the mediation conference was held on July 22, 2002, by Patrick H. Zachary, a Mississippi attorney experienced in mediation.     The mediation conference took place at the Mississippi Bar Center in Jackson, and present at this conference were Chantey's president and sole shareholder, Sam Kazery, his wife, Wren Kazery, and Chantey's legal counsel, Matthew Pepper and Peter K. Smith.  Robert A. Malouf attended the mediation conference as Malaco's legal counsel.

¶4.     The mediation conference primarily focused on bringing the parties to terms concerning the ownership of the intellectual rights of Tate's songs and the accompanying lost proceeds realized by these songs. Eight and one-half hours into the mediation conference, the parties reached a settlement which was memorialized in a document styled "Post Mediation

Agreement." Malouf executed this agreement on behalf of Malaco, and Kazery, Pepper and Smith executed this agreement on behalf of Chantey.

¶5. Following the mediation conference, and in an attempt to clarify the agreed terms of the Post Mediation Agreement, Zachary, as promised, reduced the details of the day's deliberations to a typewritten document dated August 8, 2002. This document was in fact a draft letter to the participating attorneys, and this letter set out the full terms of the Post Mediation Agreement reached between the parties.

¶6. Shortly after this correspondence was delivered, Malaco filed with the court a motion to enforce the settlement. By way of a response, Chantey filed a motion to set aside the mediation agreement accompanied by a motion requesting that Chantey be allowed to be represented pro se through its president and sole shareholder, Kazery.

¶7. These motions were heard by the circuit court on January 13, 2003, and in open court, Judge Kidd denied Chantey's motion to represent itself pro se and found that Rule 1.06 of the Mississippi Uniform Rules of Circuit and County Court Practice clearly mandated that a corporation must be represented by counsel.[1] In actuality, while Judge Kidd acknowledged, at the beginning of the hearing, the existence of Chantey's pending motion to proceed pro se, this motion was not considered by the trial judge until Kazery rose to cross-examine Malaco's first witness at the hearing, at which time Malaco's attorney objected pursuant to URCCC 1.06. After an on–the-record discussion in open court with Kazery and Malaco's counsel, Judge

---

[1]URCCC Rule 1.06 states that "[a]ll Corporations that are party plaintiffs must be represented by an attorney licensed to practice law in this state, whose name must appear on the pleading prior to the filing of the pleading."

3

Kidd found that URCCC 1.06 afforded him no discretion and that he was thus required to deny Chantey's motion to proceed pro se via Kazery. During the discussion prior to the trial court's ruling on the motion, Kazery requested of the trial judge that if he should deny the motion to proceed pro se, then the trial judge should "accept all the letters, all the motions, and all the attachments that are filed and those that have been hand-delivered to your administrator be considered [as well as] Mr. and Mrs. Kazery's sworn statement." After Judge Kidd's denial of Chantey's motion to proceed pro se, the transcript of the hearing reveals the following:

> Mr. KAZERY: Yes, sir. Can you accept everything we have submitted as our testimony and based on Mr. Malouf, what he just –
>
> THE COURT: It's been filed and I have it. The Court reviewed numerous documents in this case and I believe there's been at least one hearing prior to now with respect to this matter following the mediation and the Court has reviewed all documents in this matter......
>
> ************
>
> THE COURT: The Court will accept all filings you've made and in terms of any ruling that the Court makes, the Court will consider all documents you've filed.

¶8. Judge Kidd then continued the hearing on the issue of whether the settlement agreement was valid and enforceable. At the conclusion of the hearing, the trial court took this issue under advisement and in due course, the trial court entered a detailed findings of fact and conclusions of law, followed by an order granting Malaco's motion to enforce the settlement. Contained in the documents considered by Judge Kidd during his deliberations were assertions by Chantey that the mediation was tainted by coercion and that Kazery signed the Post Mediation Agreement under duress and mental impairment.[2]

---

[2]Chantey argues that a memorandum filed with the circuit court on the day of the hearing and its accompanying exhibits have been omitted from the record and are not listed on the circuit court docket, and

¶9. Aggrieved by the circuit court's enforcement of the settlement agreement, Chantey timely filed its notice of appeal and retained new counsel to represent it before this Court.

## DISCUSSION

¶10. Today's case involves a decision made by a circuit judge sitting without a jury. On appeal of a trial court judgment rendered subsequent to a bench trial where the judge has sat as the fact-finder, we afford deference to the findings of the trial judge. We have held "a circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000) (citing *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss. 1993)). Therefore, this Court affords the same deference to the rulings of a circuit court judge ruling from the bench as it does a chancellor. It follows that we will not disturb the findings of the judge unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Hill v. Southeastern Floor Covering Co.*, 596 So.2d 874, 877 (Miss. 1992), *Bell v. Parker*, 563 So.2d 594, 597 (Miss. 1990).

¶11. We begin with an acknowledgment of the general premise that compromise reached by way of mediation or otherwise, is favored in the state of Mississippi. Moreover, the law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the

---

that it is unclear whether these documents were ever considered by Judge Kidd. Suffice it to state here that there is nothing in the record to even infer to us that Judge Kidd did not do exactly as he announced in open court, and that was that he would "accept all filings you've made and in terms of any ruling that the Court makes, the Court will consider all documents you've filed."

agreement which the parties have made, absent any fraud, mistake, or overreaching. *Hastings v. Guillot*, 825 So.2d 20, 24 (Miss. 2002) (citing *First Nat'l Bank v. Caruthers*, 443 So.2d 861, 864 (Miss. 1983); *Weatherford v. Martin*, 418 So.2d 777, 778 (Miss. 1982)). Importantly, we apply contract law analysis to settlement agreements. This is true of any type of negotiated settlement. *Newell v. Hinton*, 556 So.2d 1037, 1042 (Miss. 1990); *East v. East*, 493 So.2d 927, 931-32 (Miss. 1986). Settlement agreements are contracts made by the parties, upon consideration acceptable to each of them, and the law will enforce them. *Id.* at 932-33. Courts will not rewrite them to satisfy the desires of either party. *Travelers Indem. Co. v. Chappell*, 246 So.2d 498, 510 (Miss. 1971). In *McCorkle v. Hughes*, 244 So. 2d 386 (Miss. 1971), we discussed the appropriate application of contract principles to agreements made in contemplation of settlement. One of the cases cited by the Court in *McCorkle* was *Kohler v. Oliver*, 114 Miss. 46, 74 So. 777 (1917). In *Kohler*, this Court stated:

Compromises are favored by law. The rule is stated in 5 R. C. L. 878, as follows:

"It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely scrutinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration for such agreements is not only valuable, but highly meritorious. They are encouraged because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement.

6

114 Miss. at 46, 74 So. at 777. In addition to *Kohler*, this Court in *McCorkle* also cited *Fornea v. Goodyear Yellow Pine Co.*, 181 Miss. 50, 178 So. 914 (1938). In *Fornea*, we stated:

> If the plaintiff signed the contracts involved in the above statements, knowing their conditions, and was not misled or deceived by fraudulent representations, he is bound by the written terms of the contract. While the law recognizes that there is no method known to the law by which to make people prudent, and that experience shows that people often imprudently make contracts, including the signing of releases, yet every person must be presumed to know the law, and in the absence of some misrepresentation or illegal concealment of facts, the person must abide the consequences of his contracts and actions.
>
> In the light of the fact that people are not prudent, and may at times be unjustifiably imposed upon, this court has been liberal in reviewing transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequences of his acts merely because he has not acted prudently or diligently about his contracts or other matters.

181 Miss. at 65, 178 So. at 918.

## I. WHETHER THE MEDIATION AGREEMENT WAS THE PRODUCT OF DURESS, COERCION, MENTAL WEAKNESS AND THEREFORE PROCEDURALLY UNCONSCIONABLE.

¶12. Chantey claims that the mediation process which resulted in the settlement of this matter was fraught with inequity and procedurally unconscionable due to duress, coercion and mental weakness. Moreover, Chantey alleges that Malouf, in representing Malaco at the parties' court-ordered mediation conference, coerced the corporation's president, Kazery, into signing an agreement he was not prepared to sign by threatening him with prosecution in

7

bankruptcy court. Conversely, Malaco asserts that Chantey has failed to offer a scintilla of evidence in support of these claims.

¶13. It is well-settled that "where conflicting testimony is presented, expert and otherwise, the [trial judge, when sitting as fact-finder] is required to make a judgment on the credibility of the witnesses in order to resolve the questions before the court." *Hastings v. Guillot*, 825 So.2d 20, 24 (Miss. 2002) (citing *Broadhead v. Bonita Lakes Mall, Ltd. P'ship*, 702 So.2d 92, 101 (Miss. 1997); *Doe v. Doe*, 644 So.2d 1199, 1207 (Miss. 1994)).

¶14. In today's case, it was the circuit judge's responsibility to reconcile the evidence offered before the court and determine whether it supported Chantey's allegations of duress, lack of voluntariness, and overreaching. On this issue, Judge Kidd specifically found, "[t]hough Chantey, through Mr. Kazery, has filed various documents in this Court suggesting that there was confusion about the settlement, or that Chantey acted under duress, or that Chantey was somehow coerced into the settlement, there is no proof of any improper conduct in this matter on behalf of Chantey's attorneys, the mediator, or Malaco's attorney." Ultimately, Judge Kidd concluded that not only was there no proof in support of Chantey's allegations, there was no legal basis in which to undergird a finding that the settlement agreement was tainted by fraud, coercion, or duress.

¶15. Upon examination of the record, there is overwhelming evidence supporting Judge Kidd's determination to enforce the parties' settlement agreement reached at the mediation conference. At the motion hearing, the testimony of Malouf, Malaco's attorney at the mediation conference, Zachary, the mediator, and Pepper, who represented Chantey at the

8

mediation conference, revealed an arm's-length settlement agreement.[3]  Thus, the testimony of all the witnesses who testified revealed that the settlement process was fair and without oppression.  Specifically, Pepper attested to the fact that he attended the mediation conference as Chantey's lawyer; that the parties negotiated at arm's length; that the parties reached a settlement agreement; that the terms of the settlement were clearly communicated to Chantey; that Chantey understood the terms of the settlement; that Chantey agreed to the settlement; that Kazery signed the settlement on behalf of Chantey; that he (Pepper) as well as his co-counsel, Smith, agreed to the terms of the settlement; that Chantey, through Kazery, participated in every conversation and every negotiation throughout the mediation; that at the conclusion of the mediation, the parties and the mediator came together to discuss the terms of the settlement in order to finalize the agreement; that throughout the mediation, Chantey was provided the assistance of counsel; and, that Zachary's letter prepared subsequent to the mediation conference stated the agreed terms and conditions of the settlement reached between the parties.

¶16.    When testifying about the execution of the settlement agreement, Malouf stated "all the parties were in the same room and we went over the terms of this [agreement] twice.  In other words, I was present, Mr. Smith was present, Mr. Pepper was present, Mr. Kazery and his wife

---

[3]Since Malouf was a witness at this hearing, another attorney represented Malaco at the hearing. Likewise, as to Pepper, both Malaco's attorney and Pepper agreed prior to Pepper's testimony, that there would be no effort to elicit from Pepper information which he may have obtained in his attorney-client relationship with Kazery and Chantey.

9

were present, and the mediator was present as we sat down and went over the terms to make sure that the terms were right. This was not something that was done secretly."

¶17. Finally, a transcript of Zachary's deposition testimony was received into evidence at the motion hearing. Zachary's testimony corroborated the occurrences as described by the other witnesses. Additionally, Zachary testified that Kazery voluntarily signed the settlement agreement on behalf of Chantey; that Kazery understood the terms of the settlement agreement; that he [Zachary] did not see anyone threaten or intimidate Kazery; that nothing untoward occurred at the mediation which should cause the settlement to be set aside; that the parties were not forced to agree to any provision of the settlement; and, that his letter of August 8, 2002, reflected the settlement agreement reached at the mediation conference.

¶18. Interestingly, while the transcript of the hearing does reflect that the trial court disallowed Kazery's request to call a witness based on the trial court's ruling that Chantey could not proceed pro se (meaning that Kazery could not interrogate any witness called by Chantey), even Malaco's counsel conceded that "[Malaco's] position is that [Kazery] can testify as a witness but he can't act as an advocate." For whatever reason, Kazery chose not to testify. However, the record does reveal that at the conclusion of the evidentiary hearing, Kazery basically set out Chantey's position in non-stop argument to the trial court which consumed roughly one and one-half pages of the twenty-seven page transcript of the hearing.

¶19. Thus, while Kazery was not able to call and interrogate witnesses, it can hardly be said that the trial court was in the dark as to Chantey's position on the issue of the validity of the

10

settlement agreement. *See and compare **Guar. Nat'l Ins. Co. v. Pittman***, 501 So.2d 377, 386 (Miss. 1987).

¶20.    Clearly, there is substantial evidence supporting Judge Kidd's discretionary determination regarding the viability of the parties' settlement agreement. Accordingly, for the reasons stated, we find this issue to be without merit.

## II.     WHETHER THE POST MEDIATION AGREEMENT REFLECTS A MEETING OF THE MINDS BETWEEN THE PARTIES.

¶21.    Chantey argues that the parties' settlement agreement was not the product of a meeting of the minds.    Specifically, it alleges that additional handwritten language which states, "or matters which could have been raised in the complaint," was added to the agreement without Kazery's knowledge and thus was never discussed nor ever explained.  Citing ***Viverette v. State Highway Comm'n***, 656 So.2d 102 (Miss. 1995), Chantey claims that Kazery's lack of knowledge as to this phrase prevented there being a meeting of the minds.

¶22.    The law espoused in ***Viverette*** is easily distinguishable from the facts of this case.  In ***Viverette***, we reversed an order of the trial court enforcing the parties' settlement agreement due to the fact that there was insufficient evidence of a meeting of the minds.   The dispute in ***Viverette*** was over the consideration of a $2,800 payment made before settlement under  the "quick take" provision found in our eminent domain statutory scheme. ***Id.*** at 103.   In remanding the case back to the trial court for further proceedings concerning this provision, we noted that "there is no evidence in this record that the effect of the quick take deposit was considered and agreed upon." ***Id***.    Notably, in ***Viverette***, the trial court entered an order without having

entertained evidence concerning whether there had been a meeting of the minds between the parties concerning the effect of the quick take deposit.

¶23. Today's case evidences a clear intent by both parties to be bound by the terms of their negotiated settlement. Moreover, the evidence clearly demonstrates that both parties fully acquiesced in all the terms included in their agreement which was reached after an eight and one-half hour mediation conference.

¶24. Not only is Chantey's argument that there was no meeting of the minds unsupported by the record, it is contrary to Mississippi law. In *Terminix Intern., Inc. v. Rice*, 904 So.2d 1051 (Miss. 2004), we reiterated the well-accepted contract principle that parties are charged with the responsibility of reading the agreements they execute, stating:

> It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d at 455. (citing *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.*, 584 So.2d 1254, 1257 (Miss. 1991), *Koenig v. Calcote*, 199 Miss. 435, 25 So.2d 763 (1946), *McCubbins v. Morgan*, 199 Miss. 153, 23 So.2d 926 (1945)). Under *McKenzie*, the law presumes that Dr. Rice read the agreement he signed with Terminix. Had he done so, he would have seen the arbitration clause in the contract. Furthermore, this Court has held that "[i]n Mississippi, a person is charged with knowing the contents of any document that he executes." *Russell*, 826 So.2d at 725 (citing *J.R. Watkins Co. v. Runnels,* 252 Miss. 87, 172 So.2d 567, 571 (1965) ("A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him.")).

904 So. 2d at 1056.

¶25. Mississippi law precludes Chantey from asserting ignorance in regards to a term or phrase clearly written into the parties' agreement. Moreover, Chantey does not deny that the

phrase to which it objects existed in handwritten form on the face of the parties' settlement agreement at the time of execution. It follows that in negotiating with Malaco, Kazery, as president of Chantey, should be expected to have read and have full knowledge of the contractual language contained in the parties' settlement agreement. Kazery, on behalf of Chantey, attempts to argue that after a decade of litigation and over eight and one-half hours of mediation, he, accompanied by two attorneys, blindly signed or was duped into acquiescing in contractual language with which he did not agree. This argument is unconvincing. As stated, the evidence presented at the hearing clearly demonstrates that the parties reviewed and understood the terms of the agreement.

¶26. Thus we find that Chantey's assertion that there was no meeting of the minds between the parties is wholly without merit inasmuch as Kazery was an able participant in a freely negotiated bargaining process which produced an agreement of which he was presumed to have full knowledge. This issue is thus without merit.

### III. WHETHER THE PARTIES AGREED TO A SPECIFIC PROVISION CONTAINED WITHIN THE SETTLEMENT AGREEMENT.

¶27. Chantey argues that the ninth provision included in Zachary's letter memorializing the terms of the parties' settlement agreement should not be recognized as part of what was negotiated at mediation.[4] In direct contradiction of a prior argument, Chantey now asserts here

---

[4]The ninth term or provision of the settlement agreement stated:

All other compositions composed in whole or in part by Tommy Tate during the period covered by the Malaco/Tommy Tate Songwriter Agreement shall be the sole and exclusive property of Malaco, Inc. Malaco, Inc. shall enjoy the ownership and use of such compositions free of all claims of Chantey Music Publishing, Inc.

13

that the signed mediation agreement speaks for itself and that parol evidence of an additional provision should not be considered.

¶28.     Chantey presents this argument for the first time on appeal to this Court. In *Southern v. Mississippi State Hosp.*, 853 So.2d 1212 (Miss. 2003), we reiterated the important procedural tenet that "[a] trial judge cannot be put in error on a matter not presented to him." *Id.* at 1214-15 (*see Mills v. Nichols*, 467 So.2d 924, 931 (Miss. 1985)). Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs. *Parker v. Miss. Game & Fish Comm'n*, 555 So.2d 725, 730 (Miss. 1989) (citing *Britt v. State,* 520 So.2d 1377, 1379 (Miss. 1988); *Shelton v. Kindred*, 279 So.2d 642, 644 (Miss. 1973)). Stated clearly, "[i]t is an elementary and familiar rule that we sit to review actions of the lower courts, and we will not undertake to consider matters which do not appear of record in the lower court, absent unusual circumstances. *Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So.2d 436, 446 (Miss. 1989) (citing *Educational Placement Servs. v. Wilson*, 487 So.2d 1316, 1320 (Miss. 1986)).

¶29.     The record clearly evidences the fact that Chantey did not present this argument in its motion to set aside mediation and did not present the argument at the motions hearing. Inasmuch as Judge Kidd has been denied the opportunity to decide this issue, we find this issue is not properly before this Court and thus decline to consider it.

14

¶30. Although, Chantey, as a corporate plaintiff, has not assigned as error the trial judge's denial of its request to permit Kazery's pro se representation of the corporation at trial, Chantey does mention several times in its brief that it was prejudiced by the trial court's disallowing Chantey, through Kazery, to cross-examine Malaco's witnesses, and to call and interrogate witnesses in Chantey's case-in-chief. Thus, Chantey makes an alternative argument that, at the very least, this Court should remand this case to the trial court " for an evidentiary hearing where both parties can actively participate and all evidence that pertains to this issue can be heard." However, in making this assertion, Chantey has not cited any authority in support of his contention that he is entitled to a new evidentiary hearing because of the trial judge's invocation of URCCC 1.06. Therefore, we are under no obligation to consider this proposition. *Ferrell v. River City Roofing, Inc*., 912 So.2d 448, 456 (Miss. 2005) (citing *Williams v. State*, 708 So.2d 1358, 1362-63 (Miss. 1998)); *Hoops v. State*, 681 So.2d 521, 535 (Miss. 1996). *See also* M.R.A.P. 28(a)(6).

## CONCLUSION

¶31. Compromise reached by way of mediation is a favored form of dispute resolution in Mississippi. In today's case, the evidence clearly indicates that the parties' settlement agreement was free from contractual defenses of fraud and overreaching. The trial judge's determination that there was no proof in support of the allegations of fraud, coercion and duress is fully supported by the record and as such must be upheld. Therefore, the judgment enforcing the parties' settlement agreement as entered by the Circuit Court of the First Judicial District of Hinds County is affirmed.

15

¶32.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.  DIAZ J., NOT PARTICIPATING.**