# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KM-00265-COA

BENJAMIN NATHAN HOWELL A/K/A                                          APPELLANT
BENJAMIN HOWELL

v.

STATE OF MISSISSIPPI                                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2023 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN NATHAN HOWELL (PRO SE) |
| ATTORNEY FOR APPELLEE: | CANDACE COOPER BLALOCK |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 08/20/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-KM-00270-COA

BENJAMIN NATHAN HOWELL A/K/A                                          APPELLANT
BENJAMIN HOWELL

v.

STATE OF MISSISSIPPI                                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2023 |
| TRIAL JUDGE: | HON. MICHAEL PAUL MILLS JR. |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN NATHAN HOWELL (PRO SE) |
| ATTORNEY FOR APPELLEE: | CANDACE COOPER BLALOCK |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 08/20/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Benjamin Howell was indicted for speeding and driving without a tag in the Justice Court of Monroe County. He appealed those convictions to the Monroe County Circuit Court and received trial de novo. After testimony was received, the circuit court found Benjamin Howell guilty of speeding and driving without a tag. He now appeals. Finding no merit to the issues raised on appeal, we affirm.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

¶2.     On November 14, 2020, Howell was stopped by a State trooper with the Mississippi Highway Patrol for driving over the posted speed limit. The stop occurred on Highway 25 in Monroe County. Howell was charged with speeding and driving without a tag. On March 4, 2021, Howell was found guilty of both charges by a Monroe County Justice Court. Howell properly perfected his appeal to the Monroe County Circuit Court. On January 31, 2023, a trial de novo was held. Before trial, Howell moved to dismiss the charges against him arguing that "the procedures were not followed leading up to" trial. The judge denied that motion.

¶3.     The State called Tahkendris Smith, the State trooper. On the evening of November 14, 2020, Trooper Smith "was patrolling on Highway 25 and was running radar" when he "observed [Howell's] vehicle going faster than the posted speed limit, which [was] 55 miles [per] hour." There were no other vehicles near Howell's at the time. Trooper Smith used his radar to confirm that Howell was driving 81 miles per hour. Trooper Smith testified he

---

[1] Howell filed two notices of appeal, and we consolidated the appeals because his charges were tried together.

"pulled over to the northbound shoulder, turned around and made the stop." As Trooper Smith approached Howell's vehicle, he observed Howell "by himself with a lot of stuff in his car." Trooper Smith asked Howell for his driver's license and proof of insurance and asked him "why he didn't have a tag [and] how long he had the car." Howell told Trooper Smith he had the car for "four and a half months." When Trooper Smith asked Howell why he was speeding, Howell "stated he didn't realize he was speeding at all." Trooper Smith testified his radar was properly calibrated and in working order. A video of the traffic stop was entered and accepted into evidence. The video was played in open court.

¶4. On cross-examination, Howell asked Trooper Smith to see the certification for the "tuning forks" used to calibrate Trooper Smith's radar. The judge overruled the request. Howell questioned Trooper Smith about the location of the traffic stop[2] and pointed out that the stop occurred near a "natural gas pumping station" with antennas that "interfered" with Trooper Smith's radar gun. Maps, aerial photos, and photos taken by Howell of the location near where he was stopped were entered into evidence. On redirect examination, Trooper Smith testified that in his training and experience, nothing in that area would have interfered with the radar gun. The State rested.

¶5. Howell called his father, Lawrence Howell, to testify. Lawrence was tendered as an expert in the field of radar technology. The following exchange occurred with Howell:

---

[2] The ticket indicated the stop occurred "at or near" Homestead Road. Trooper Smith testified this language was required to give a reference point as to where the stop occurred. He testified that the area of the highway where the stop took place was lined with trees and that Howell's photos were not reflective of that exact location. Trooper Smith further testified that even if the antennae had the potential to interfere with the radar gun, Howell and Trooper Smith were not close enough to be affected.

3

| | |
|---|---|
| THE COURT: | All right. Well, here is the thing. What field is he going to be providing expert testimony? |
| HOWELL: | Radar electronics, interference, radio waves, how they prop[a]gate. The witness is an expert in that matter recognized by the state and federal government and different standard of rating agencies and has university degrees in these topics. |

¶6.     The trial judge allowed Lawrence Howell to be sworn in. The court questioned the witness about his qualifications and opinions, producing the following exchange:

| | |
|---|---|
| THE COURT: | All right. What type of experience do you have in reviewing the radar guns that are used by the Mississippi Highway Patrol? |
| LAWRENCE: | I have - - well, I'm an electrical engineer and a professional engineer. I'm also a registered land surveyor. I'm also a certified arborist, and I'm a ham radio operator, have an [e]xtra [c]lass license. |
| THE COURT: | All right. [Lawrence], I'm going to ask you the question again. What experience do you have being familiar with the specific radar gun that the Mississippi Highway Patrol uses? |
| LAWRENCE: | I'm not familiar with the specific radar gun the Mississippi Highway Patrol uses. |
| THE COURT: | What type of radar gun do they use? |
| LAWRENCE: | I do not know what type they use. . . . |
| . . . . | |
| THE COURT: | All right. Do you have copies of your curriculum vitae? |
| LAWRENCE: | No, sir, I do not have that with me. |
| . . . . | |
| THE COURT: | In the last ten years, have you had an article that has been reviewed by your peers in this field as it pertains to speed detection radars? |
| LAWRENCE: | No, sir, not in the last ten years. |
| . . . . | |
| THE COURT: | Have you had any specific education, classes that you have taken in the last ten years as it pertains to this subject matter? |

4

LAWRENCE: Not specifically on radar. . . .

. . . .

THE COURT: Okay. [Lawrence], have you testified previously in federal court or state court in Mississippi as an expert?

LAWRENCE: No, sir.

THE COURT: In any capacity?

LAWRENCE: I testified as a fact witness in federal court in 1997 where the Pontotoc Electric Power Association had an insurance company that was suing the power association over a furniture factory fire over a subrogation issue.

THE COURT: All right. Well, as of right now, [Lawrence], the [c]ourt does not find you to be an expert in the field of radar technology, especially relating to the Mississippi Highway Patrol's radar speeding systems. With that being said, [Lawrence], I am still going to allow you to briefly explain, I'm assuming, why the radar was not working on the night in question, the night in question being November the 14th of 2020, at or near Homestead Road, more specifically, near the gas station and/or its radio towers, antennas, et cetera.

LAWRENCE: Okay. I wasn't there. I can't say if the radar was working or not working.

. . . .

THE COURT: I'm going to let you at least explain briefly why you think - - I assume the purpose of this testimony is to say that the radar equipment was improperly working or could not work properly at this location. Is that correct, [Howell]?

HOWELL: Your Honor, it's to establish interference in radio signals.

Lawrence Howell explained that he and Howell went to the area where Howell received the ticket, and Lawrence observed a "microwave tower" that "caught [his] attention very heavily[.]" He explained the antennae on the tower "could [have] possibly cause[d] interference with the radar." He did not perform any kind of experiment or provide any proof that the radar was not working properly on the night of the stop. The trial judge "officially

and finally state[d]" that Lawrence Howell was not accepted as an expert.

¶7.    Howell called Trooper Smith to testify again. Trooper Smith testified that he was not trained to determine whether interference had occurred on the radar. He testified he did not notice or recognize any interference on the night that he stopped Howell. He testified the radar guns are calibrated three times a day, and he is required to complete paperwork at the end of each week verifying that the radars were calibrated.

¶8.    After all the testimony, Howell moved to have both causes dismissed. After hearing all the testimony and considering all the evidence, the trial judge stated the following:

> The [c]ourt is going to deny your motion to dismiss as to both causes. The [c]ourt is going to move forward and find that you are guilty of both [causes] . . . . You have argued that a highway patrolman cannot issue a citation for this particular type of tag. That would be a novel argument. And then you have also argued that the microwave towers in the area would cause the radar equipment to malfunction. That would be a novel argument to this [c]ourt's eyes as well, rendering the highway patrol incapable of issuing traffic citations in the state of Mississippi for speeding and improper/no tag.

The trial judge found Howell guilty of both charges. Howell now appeals.

¶9.    Howell's brief to this Court was fifty-five pages long, and he assigns a total of twenty-six issues. He discusses the issues at length and makes a wide range of complaints from violations of his due process rights to allegations of ex parte communication and prosecutorial misconduct. Those issues were not raised in the trial court. Most of the issues Howell claims before this Court are procedurally barred for his failure to raise them at the trial level. "It is well settled that issues presented for the first time on appeal are procedurally barred from consideration." *Urban v. Urban*, No. 2022-CP-00195-COA, 2023 WL 5695670, *7 (¶38) (Miss. Ct. App. Sept. 5, 2023) (citing *Wood v. Miller*, 179 So. 3d 48, 50 (¶11) (Miss.

6

Ct. App. 2015)).  The only real arguable legal issues in this appeal are whether the trial judge erred in his decision finding Howell guilty of both charges, and whether the trial judge erred in not allowing Howell's father to testify as an expert witness.

**DISCUSSION**

¶10.   "A trial judge's decision in a bench trial will be affirmed as long as it is supported by substantial, credible, and reasonable evidence." *Harvey v. State*, 195 So. 3d 231, 232 (¶5) (Miss. Ct. App. 2016) (citing *Parish v. State*, 176 So. 3d 781, 785 (¶13) (Miss. 2015)).  "[O]n appeal of a trial court judgment rendered subsequent to a bench trial where the judge has sat as the fact-finder, we afford deference to the findings of the trial judge." *Peebles v. Winston County*, 929 So. 2d 385, 391 (Miss. Ct. App. 2006) (quoting *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1055 (¶10) (Miss. 2005)).  "The findings of a trial judge sitting without a jury are reversed only where the findings are manifestly erroneous or clearly wrong." *Harvey*, 195 So. 3d at 232 (¶5) (citing *Sendelweck v. State*, 101 So. 3d 734, 739 (¶19) (Miss. Ct. App. 2012) (citing *Amerson v. State*, 648 So. 2d 58, 60 (Miss. 1994))).  The Mississippi Supreme Court has held that "a circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Chantey*, 915 So. 2d at 1054 (¶10) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000) (citing *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993))).  "Therefore, this Court affords the same deference to the rulings of a circuit court judge ruling from the bench as it does a chancellor." *Id.*  "It follows that we will not disturb the findings of the judge

unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id.* (citing *Hill v. Se. Floor Covering Co.*, 596 So. 2d 874, 877 (Miss. 1992); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990)). Furthermore, "the circuit court, in its role as the finder of fact, has the sole authority for assessing witness credibility." *Phillips v. City of Oxford*, 368 So. 3d 317, 323 (¶20) (Miss. 2023) (citing *City of Jackson v. Brister*, 838 So. 2d 274, 279 (¶19) (Miss. 2003)). This Court does not "reweigh the evidence or make witness-credibility determinations." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017).

## I. Sufficiency

¶11. Howell argues the trial judge erred in not dismissing his speeding ticket and tag violation charge. "This Court reviews a challenge to the sufficiency of the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences reasonably drawn from the evidence." *Henley v. State*, 136 So. 3d 413, 415 (¶8) (Miss. 2014) (citing *Graham v. State,* 120 So. 3d 382, 386-87 (Miss. 2013)). If the Court finds that a reasonable trier of fact could find the essential elements to be proven beyond a reasonable doubt, this Court will uphold the conviction. *Ronk v. State*, 172 So. 3d 1112, 1129 (¶3) (Miss. 2015).

¶12. The record contains evidence that Howell was speeding on the day in question. At trial, Trooper Smith's testimony indicated that he observed Howell's vehicle driving over the posted speed limit of fifty-five miles per hour. Trooper Smith's radar gun, which he testified had been properly calibrated that day, captured Howell driving at 81 miles per hour. A video of the stop was introduced and admitted into evidence. Trooper Smith testified as to the

speeding and the lack of a tag. Howell did not offer any evidence to contradict Trooper Smith's testimony or the video. His only argument was that proximity to a tower could interfere with the radar technology. However, Lawrence Howell had no proof that this occurred, nor did he conduct any experiments or offer any evidence that interference could occur with the type of radar device Trooper Smith used that day.

¶13. Further, the record contains evidence that Howell was driving his vehicle without a tag. Smith's testimony indicated that Howell admitted to Trooper Smith that he had been driving his vehicle without a tag for about four months. Howell offered no testimony at trial to dispute that testimony. The evidence was sufficient.

## II. Expert Testimony

¶14. Howell further argued on appeal that the trial judge erred in not accepting his father, Lawrence Howell, as an expert in the field of radar technology. Specifically, Howell asserts, "The [t]rial [c]ourt erred in denying the [d]efendant's witness to be qualified as an expert witness, which is contrary to state statute, federal case law, and current precedent of Mississippi *Daubert* criteria that provides leave for State Board recognized [p]rofessional [e]ngineers the privilege of testifying in [s]tate courts as statutorily recognized experts."

¶15. "This Court reviews the trial court's admissibility determination for abuse of discretion." *Corrothers v. State*, 148 So. 3d 278, 295 (¶28) (Miss. 2014) (citing *Anderson v. State*, 62 So. 3d 927, 936 (Miss. 2011)). "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion." *Id.* (citing

9

*Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 783 (¶34) (Miss. 2011)).  Experts are permitted to testify if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is a product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Queen v. State*, 325 So. 3d 656, 661 (¶17) (Miss. 2021) (quoting MRE 702).  "This rule emphasizes that it is the gate-keeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable."  *Denham*, 60 So. 3d at 784 (¶35) (citing MRE 702 cmt.).

¶16.    "This Court has adopted the United States Supreme Court's standard for judging the admissibility of expert testimony."  *Ill. Cent. R.R. Co. v. Brent*, 133 So. 3d 760, 781 (¶50) (Miss. 2013) (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589-96 (1993)).  It is the task of the trial court to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue."  *Clark v. State*, 315 So. 3d 987, 996 (¶17) (Miss. 2021) (citing *Daubert*, 509 U.S. at 592-93).  "Expert testimony admitted at trial must be based on scientific methods and procedures, not on unsupported speculation or subjective belief."  *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (¶16) (Miss. 2010) (citing *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 928 (¶31) (Miss. 2006)).

¶17. Acting as the gatekeeper, the trial judge asked Lawrence Howell a series of questions to determine whether his testimony would be relevant and reliable. Lawrence admitted he did not know the type of radar gun used by the Mississippi Highway Patrol. Lawrence admitted he did not have any proof of radar interference at the time of the stop, nor did he conduct any experiments on the matter. Lawrence admitted he did not publish any peer-reviewed articles within the last ten years. Further, Lawrence admitted he did not have a copy of his curriculum vitae on the day of trial. Accordingly, the trial judge determined that Lawrence's testimony was neither relevant nor reliable. Rather, it appears that Lawrence's testimony was based merely on unsupported speculation and his own subjective belief. We find the trial judge did not abuse his discretion by declining to accept Lawrence as an expert in the field of radar technology.

**CONCLUSION**

¶18. After listening to the testimony, the justice court judge found Howell guilty of speeding and driving without a tag. After appealing those convictions to the circuit court, a completely new trial in front of the circuit court judge occurred. After hearing the testimony, the circuit court judge found Howell guilty of both charges. In viewing the evidence in the light most favorable to the State, this Court finds that there was sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that Howell was guilty of speeding. Likewise, this Court finds that there was sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that Howell was guilty of driving without a tag. Furthermore, the trial judge did not abuse his discretion by not

11

accepting Howell's father, Lawrence Howell, as an expert witness. Accordingly, we affirm both convictions.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**