# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KM-01401-SCT

*DANIEL PARISH a/k/a DANIEL JORDAN PARISH*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | KEVIN D. CAMP |
| | JARED K. TOMLINSON |
| | WHITNEY M. ADAMS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN D. CAMP |
| | JARED K. TOMLINSON |
| ATTORNEY FOR APPELLEE: | WHITNEY M. ADAMS |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 10/22/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Daniel Parish appeals his Rankin County conviction for driving under the influence of marijuana, arguing that the prosecution failed to present sufficient evidence to prove the elements of the charged offense. Finding no error, we affirm.

## FACTS & PROCEDURAL HISTORY

¶2.     At around 12:30 a.m. on October 9, 2012, Parish encountered a driver's license safety checkpoint while driving on Luckney Road in Brandon, Mississippi. Officer James King of

the Brandon Police Department was conducting the checkpoint, and he observed that Parish "slowed down tremendously and did kind of a crawl roll to the checkpoint." Officer King approached Parish's car and asked to see his driver's license. Upon shining his flashlight in the car, Officer King noticed that Parish "had a green leafy substance all over his pants and some ash and he was really nervous." Officer King suspected the leafy substance to be marijuana. Officer King also smelled burnt marijuana on Parish's breath and in the vehicle. Parish's speech was slurred, and his eyes were red. Officer King asked Parish if he had been drinking, and Parish responded in the negative. However, Parish admitted that he had smoked marijuana approximately twenty minutes prior to encountering the checkpoint.

¶3. Officer King asked Parish if he had any marijuana in his possession. Parish initially stated that he had some marijuana in a backpack in his car, but he later clarified that he had only a hookah pipe. Parish gave Officer King consent to search the backpack, and Officer King found a hookah pipe inside. The pipe smelled of burnt marijuana.

¶4. Officer King instructed Parish to pull over into an adjacent parking lot and exit his vehicle so he could administer a field sobriety test. Prior to submitting to these tests, Parish affirmed that he did not have any medical issues or physical impairments that would hinder his ability to complete the tests. First, Officer King performed a horizontal-gaze nystagmus test on Parish. Officer King did not observe any signs of impairment based on this test. Next, Officer King conducted a lack-of-convergence test. Parish's eyes failed to converge during this test. Finally, Officer King administered the Romberg Balance Test, which judges the subject's ability to perceive the passage of time. Parish tested within the normal range for

2

judging the passage of time, but he exhibited eyelid and leg tremors while performing the test. After administering these tests, and after considering Parish's dilated pupils, bloodshot eyes, and slurred speech, Officer King came to the conclusion that Parish had been driving under the influence of marijuana. At that point, Officer King placed Parish under arrest.

¶5.     Parish consented to having his blood drawn for testing, so Officer King transported him to Crossgates River Oaks Hospital. After Parish's blood was drawn, it was sent to the Mississippi Crime Laboratory for testing, along with the hookah pipe found in his car. Parish's blood and the hookah pipe both tested positive for marijuana.

¶6.     Parish was charged with first-offense DUI in violation of Section 63-11-30 of the Mississippi Code. Specifically, Parish was charged under Section 63-11-30(1)(b), which prohibits the operation of a motor vehicle while "under the influence of any other substance which has impaired such person's ability to operate a motor vehicle," and Section 63-11-30(1)(d), which prohibits the operation of a motor vehicle while "under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law[.]" Miss. Code Ann. § 63-11-30(1)(b),(d) (Rev. 2013).[1] Parish also was charged with possession of drug paraphernalia in violation of Section 41-29-139(d)(2) of the Mississippi Code. On April 17, 2013, Parish entered a plea of no contest to these charges in the Municipal Court of Brandon and was found guilty.

---

[1] Section 63-11-30 was amended in 2014, and Section 63-11-30(1) was reorganized. *See* Miss. Code Ann. 63-11-30(1) (Supp. 2015). However, the statutory language applicable to the instant case was not changed.

¶7. Parish timely appealed his convictions to the Rankin County Court, and a bench trial was held on August 30, 2013. At the trial, Officer King testified concerning his interactions with Parish at the checkpoint. The State also called Emily Harper, a forensic toxicologist with the Mississippi Crime Laboratory, as an expert witness. Harper had conducted the testing on Parish's blood after he was arrested. Harper confirmed that Parish's blood contained both active and inactive metabolites of marijuana. Harper explained that inactive metabolites are an indicator of past usage, while the presence of active metabolites in the blood indicates that the drug was still acting upon the body at the time the blood was drawn. Based on the results of her testing, Harper opined that Parish was under the influence of marijuana when he encountered the checkpoint. She clarified that it would be impossible to determine to what extent he was impaired based solely on the test results.

¶8. Parish testified in his own defense at trial. Parish explained that he had been at a friend's house prior to encountering the checkpoint. He admitted that he and his friends had been smoking marijuana from a hookah pipe. After they finished smoking, Parish stated that they put the hookah pipe away and talked for a while. He denied telling Officer King that he had smoked marijuana twenty minutes before reaching the checkpoint. He claimed that he had stopped smoking for more than twenty minutes before even leaving his friend's house. On cross-examination, he stated that the marijuana had given him "a little bit of a body buzz," but he asserted that he was not too impaired to drive.

¶9. The defense also called Tony Corroto, a retired police officer specializing in the "administration and interpretation of DUI detection." Corroto was accepted as an expert

4

witness in the fields of sobriety testing, Drug Recognition Expert protocols, and the effects of alcohol and drugs on the human body. Corroto reviewed the police reports and crime lab reports concerning Parish's case and came to the conclusion that "I see signs of consumption of cannabis, but impairment, I don't see it[.]" Corroto testified that a person who is under the influence of cannabis (marijuana) would have pronounced impaired perception of time and distance. He also stated that individuals who are under the influence of cannabis have significant problems dividing their attention between different tasks. Corroto opined that the sobriety tests administered by Officer King did not account for this type of impairment, and he did not observe any evidence that Parish exhibited any signs of impairment during his interaction with Officer King. Corroto also claimed that the lack-of-convergence test lacked scientific validity. On cross-examination, Corrotto conceded that Parish was, clinically speaking, under the influence of marijuana, but he maintained that there was no evidence of intoxication or impairment.

¶10. After both sides had rested, the trial court found that the prosecution had proved beyond a reasonable doubt that Parish was guilty of driving under the influence of marijuana in violation of Section 63-11-30(1)(d). The trial court did not rule on the prosecution's charge under Section 63-11-30(1)(b). Parish was sentenced to serve forty-eight hours in jail, was required to pay a $1,000 fine, plus costs and assessments, and was ordered to attend the next available session of the Mississippi Alcohol Safety Education Program. The trial court also ordered Parish to attend a Victim Impact Response seminar but suspended that order on

5

the condition that Parish met the other terms of his sentence. The trial court held in abeyance the prosecution's request to have Parish pay the fees associated with the crime lab's services.

¶11. The trial court also found Parish guilty of possessing paraphernalia and sentenced him to six months' imprisonment, with five months and twenty-five days suspended, to run consecutively to his sentence on the DUI charge, for a total of seven days to serve. In addition to the sentence of imprisonment, the trial court ordered Parish to pay a $500 fine, with $250 suspended. The trial court held in abeyance the prosecution's request to assess the crime lab fees associated with the paraphernalia charge to Parish.

¶12. On appeal, the Rankin County Circuit Court affirmed the trial court's judgment in all respects. Aggrieved, Parish has appealed his DUI conviction[2] to this Court, arguing that the prosecution presented insufficient evidence that he was driving under the influence of marijuana.

## STANDARD OF REVIEW

¶13. In reviewing a challenge to the sufficiency of the evidence, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The credible evidence supporting the defendant's guilt must be taken as true, and the prosecution must be given the benefit of all reasonable inferences that may be reasonably drawn from the evidence. *McClain v. State*,

---

[2] Parish does not appeal his conviction for possession of paraphernalia.

6

625 So. 2d 774, 778 (Miss. 1993). In addition, when reviewing the decision of a trial judge sitting without a jury, this Court affords the judge "the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Johns v. State*, 926 So. 2d 188, 202 (Miss. 2006) (quoting *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1055 (Miss. 2005)).

## DISCUSSION

¶14. Parish's sole argument on appeal is that the State failed to present sufficient evidence that he was driving under the influence of marijuana. Parish was convicted of violating Section 63-11-30(1)(d) of the Mississippi Code, which provides, "It is unlawful for any person to drive or otherwise operate a vehicle within this state who . . . is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law[.]" Miss. Code Ann. § 63-11-30(1)(d) (Rev. 2013). This Court has found that the phrase "under the influence" is commonly understood to mean "driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Leuer v. City of Flowood*, 744 So. 2d 266, 269 (citing *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998)). At trial, Parish conceded that he had smoked marijuana, a Schedule I controlled substance, on the night of his arrest. *See* Miss. Code Ann. §§ 41-29-113(c)(23)(A), 41-29-139(c) (Rev. 2013). However, Parish argues that the State was required to present proof that his ability to operate his vehicle was impaired by his consumption of marijuana.

7

¶15. This Court has had few occasions to consider the sufficiency of a DUI conviction involving marijuana. However, the Court of Appeals has considered this issue on several occasions. For example, in ***Weil v. State***, 936 So. 2d 400, 402 (Miss. Ct. App. 2006), the defendant was driving through a driver's license checkpoint when the arresting officer noticed smelled the odor of burnt marijuana coming from his vehicle. The defendant admitted that he had smoked marijuana prior to driving. ***Id.*** After asking the defendant to exit his vehicle, the officer testified that the defendant had bloodshot eyes, dilated pupils, slurred speech, and poor balance, all of which were signs that the defendant was under the influence of marijuana. ***Id.*** at 403-04. The Court of Appeals affirmed the defendant's conviction, finding that the State had presented sufficient evidence to secure a conviction. Similarly, in ***Beal v. State***, 958 So. 2d 254, 255 (Miss. Ct. App. 2007), the defendant was pulled over for driving eighty-seven miles per hour in a fifty-five-miles-per-hour zone and admitted to smoking marijuna earlier in the day. The officer observed that the defendant's eyes were "bloodshot, red and very glazy." ***Id.*** at 255-56. The officer did not perform any field sobriety tests on the defendant, nor did he procure a sample of the defendant's blood or urine for testing. ***Id.*** at 256. The Court of Appeals affirmed the defendant's conviction, finding that "[t]he evidence is such that a reasonable fact-finder could have found Beal guilty of first-offense D.U.I." ***Id.*** at 256.

¶16. Viewing the evidence in the instant case in the light most favorable to the prosecution, and after reviewing the evidence presented in ***Weil*** and ***Beal***, we find that the prosecution presented sufficient evidence that Parish was driving under the influence of marijuana.

8

Officer King testified that Parish approached the checkpoint at a "crawl." Upon approaching Parish's vehicle, Officer King also observed that Parish had dilated pupils, reddened eyes, and slurred speech. In addition, Parish exhibited eyelid and leg tremors while performing the Romberg test. Parish's blood tests revealed the presence of active metabolites for marijuana, meaning he was still experiencing the pharmacological effects of the drug even after he was arrested. Finally, Parish admitted to smoking marijuana twenty minutes prior to encountering Officer King. This evidence, viewed in the light most favorable to the verdict, was sufficient to prove not only that Parish had ingested marijuana before driving, but that he was driving "in a state of intoxication that lessens a person's normal ability for clarity and control." *Leuer*, 744 So. 2d at 268 (Miss. 1999)).

¶17. Parish makes much of the fact that his expert witness's opinions conflicted with the testimony offered by the State's witnesses. However, in reviewing the legal sufficiency of the evidence, we are bound to "accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and must disregard evidence favorable to" Parish. *Anderson v. State*, 904 So. 2d 973, 977 (Miss. 2004). Moreover, "[i]t is not this Court's duty to determine the credibility of the witnesses nor the weight of the evidence." *Dye v. State*, 498 So. 2d 343, 344 (Miss. 1986). This issue is without merit.

**CONCLUSION**

¶18. For the foregoing reasons, we affirm Parish's convictions and sentences.

¶19. **COUNT I: CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT (48) HOURS IN THE RANKIN**

9

**COUNTY JAIL, AND A FINE IN THE AMOUNT OF $1,000 PLUS COSTS AND ASSESSMENTS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF PARAPHERNALIA AND SENTENCE OF SIX (6) MONTHS IN THE RANKIN COUNTY JAIL, WITH FIVE (5) MONTHS AND TWENTY-FIVE (25) DAYS SUSPENDED, AND A FINE IN THE AMOUNT OF $500, WITH $250 SUSPENDED, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. THE FINES, COSTS AND ASSESSMENTS ARE TO BE PAID TO THE MUNICIPAL COURT OF BRANDON, MISSISSIPPI, WITHIN NINETY (90) DAYS.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶20.   Because the evidence presented at trial was insufficient to prove that Daniel Parish was "driving under the influence" of marijuana, I respectfully dissent.

¶21.   In *Carr v. State*, 208 So. 2d 886 (Miss. 1968), we held that when considering whether the State's evidence is sufficient to sustain a conviction, the critical inquiry is whether the evidence establishes "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Id.* at 889.

¶22.   Here, Parish was convicted of violating Section 63-11-30(1)(d) of the Mississippi Code, which provides: "It is unlawful for any person to drive or otherwise operate a vehicle within this state who . . . is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law." Miss. Code Ann. § 63-11-30(1)(d) (Rev. 2013). Thus, the elements of this offense are: (1) driving or otherwise operating a vehicle, (2) within this state, (3) under the influence of any drug or

10

controlled substance, and (4) the possession of this drug or controlled substance is unlawful under the Mississippi Uniform Controlled Substances Law.

¶23.    In the present case there is sufficient evidence for the jury to have found that the State had proven three elements of this crime: (1) Parish was driving a vehicle; (2) he was driving within the confines of Rankin County, Mississippi; and (3) he had consumed marijuana, the possession of which is prohibited by the Mississippi Uniformed Controlled Substances Law. *See* Miss. Code Ann. §§ 41-29-113(c)(23)(A), 41-29-139(c) (Rev. 2013). Thus, our analysis must turn to whether Parish was "driving under the influence" of marijuana.

¶24.    In ***Leuer v. City of Flowood***, 744 So. 2d 266 (Miss. 1999), this Court interpreted the term "under the influence," as it relates to Section 63-11-30(1)(a) of the Mississippi Code, which provides: "It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor . . . ." Miss. Code. Ann. § 63-11-30(1)(a) (Rev. 2013). This Court determined that the statute was not unconstitutionally vague, because we defined "under the influence" as " driving in a state of intoxication that lessens a person's normal ability for clarity and control." ***Leuer***, 744 So. 2d at 269 (citing ***Gov't of Virgin Islands v. Steven***, 134 F. 3d 526, 258 (3d Cir. 1998)).  This Court explained that this interpretation of "driving under the influence" was "consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving unsafely due to an alcohol-induced diminished capacity. Because driving 'under the influence' is commonly understood, it therefore puts citizens on fair notice of proscribed conduct." ***Leuer***, 744 So. 2d at 269 (quoting ***Steven***, 134 F. 3d 526 at 258).  Similarly, Black's Law Dictionary defines

11

"under the influence" as being "deprived of clearness of mind and self-control because of drugs or alcohol." *Under the influence,* Black's Law Dictionary (10th ed. 2014).

¶25. Thus, in this case, to meet its burden of proof, the State had to prove that Parish was driving "under the influence" of marijuana. To meet this burden, the State had to adduce evidence that Parish not only had consumed the drug but also that the drug put Parish in a state of intoxication that lessened his ability to drive his vehicle with clarity and control. The State's primary witness at trial, James King, an officer with the Brandon Police Department, testified without objection that a person under the influence of marijuana has difficulty discerning the passage of time and has impaired depth perception. He also testified that another sign of marijuana intoxication is a driver's inability to perform tasks which require divided attention, or, stated differently, the inability to perform multiple small tasks at the same time.

¶26. The majority relies upon the following information to suggest that Parish was under the influence of marijuana: that Parish approached the checkpoint slowly. However, Officer King testified that this is normal for both intoxicated and nonintoxicated drivers. Moreover, Officer King stopped Parish at a mandatory driver's license safety checkpoint, not because he was operating his vehicle atypically, incompetently, or dangerously. The majority also avers that Officer King noticed that Parish had dilated pupils, reddened eyes, and slurred speech. These factors, however, do not indicate that Parish's ability to drive was impaired. The majority also relies on the allegation that Parish exhibited eyelid and leg tremors while performing the Romberg test. The record contains no support that either of these is an

12

indicator of marijuana consumption, let alone marijuana intoxication. The majority further points to Parish's blood sample's containing active cannabinoid metabolites. However, this too merely proves consumption of some amount of marijuana, not intoxication from marijuana. Finally, the majority relies on Parish's confession to having smoked marijuana twenty minutes before he entered the checkpoint. Ultimately, the State has produced no evidence that Parish's ability to operate his motor vehicle was impaired in any way from his consumption of marijuana.

¶27. Indeed, the totality of the evidence indicates that Parish's ability to drive was not impaired by his consumption of marijuana. Evidence adduced at trial was to the effect that marijuana consumption affects a person's gross motor skills before it affects his or her fine motor skills. Officer King offered no testimony, and his arrest report did not indicate, anything unusual about Parish's gross motor skills during the course of the stop. Officer King testified that Parish was able to give the officer his driver's license without fumbling, that Parish got out of the car without stumbling, and that Parish's balance was normal throughout the course of the stop. Additionally, Officer King testified that one of the signs of marijuana intoxication is an incapacity to perform tasks requiring divided attention. The officer gave Parish two roadside sobriety tests to determine whether he was capable of performing multiple small tasks at the same time. Parish passed both tests and displayed no signs of marijuana intoxication in their completion. Officer King also testified that the misapprehension of the passage of time is a characteristic of marijuana intoxication. Officer King said that he gave Parish the Romberg testest. The Romberg test is the only standardized

13

roadside examination in which a driver is tested for marijuana intoxication. By having the driver tilt his head back and estimate when thirty seconds has elapsed, the Romberg test assesses a driver's perception of the passage of time and a driver's ability to perform tasks requiring divided attention. According to the arresting officer, Parish passed this test without issue. In every roadside test that the arresting officer administered to Parish to determine whether his ability to drive was impaired by marijuana consumption, Parish passed.

¶28. Here, the State proved that Parish had consumed some unknown quantity of marijuana. However, this Court has held that mere consumption is insufficient to prove that a criminal defendant was driving "under the influence" of an intoxicant. The same is true of alcohol consumption. *Leuer*, 744 So. 2d at 269. To prove driving under the influence, the State must prove the drug inhibited the person's capacity to operate his vehicle with clarity and control. The totality of the evidence adduced at trial establishes that Parish had *no* diminished ability to drive his car with clarity and control and that, although he had consumed marijuana at some time and in some amount, he was not intoxicated when he was observed by the arresting officer. Because Parish's conviction is not supported by sufficient evidence, I respectfully dissent.

**KING, J., JOINS THIS OPINION.**