# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01651-SCT

*COURTNEY L. RAINEY*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/24/2019 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | BRYAN P. BUCKLEY |
| | DARLA Y. MANNERY-PALMER |
| | E. CARLOS TANNER, III |
| | KATIE NICOLE MOULDS |
| | MICHAEL T. STERLING |
| | JOHN CURTIS HALL, II |
| | RANDALL HARRIS |
| | ASHLEY RIDDLE ALLEN |
| | JAD JAMAL KHALAF |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | E. CARLOS TANNER, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 03/10/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    This certiorari case considers whether there was sufficient evidence for a jury to convict Courtney Rainey of the crime of witness intimidation and whether the fifteen-year sentence violates Rainey's Eighth Amendment right to be free of cruel and unusual punishment. We reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Madison County Circuit Court.

## PROCEDURAL HISTORY

¶2.    Courtney Rainey was indicted on two counts. Count I charged Rainey with the crime of voter fraud under Mississippi Code Section 23-15-753 (Rev. 2018). Count II charged Rainey with the crime of witness intimidation under Mississippi Code Section 97-9-113(1)(d) (Rev. 2020). The jury found Rainey guilty of Count II but could not decide on Count I, and the circuit court declared a mistrial as to Count I. On the conviction for Count II, Rainey was sentenced to serve fifteen years with three years suspended and five years' probation, together with court costs and fees. The circuit court denied Rainey's post-trial motions.

¶3.    Rainey filed a timely appeal, and the appeal was deflected to the Court of Appeals. A divided Court of Appeals reversed and rendered Rainey's conviction and sentence. *Rainey v. State*, No. 2019-KA-01651-COA, 2021 WL 973050, at *1 (Miss. Ct. App. Mar. 16, 2021). Judge Deborah McDonald's well-written opinion addressed Rainey's issues. First, Rainey claimed that her conviction for witness intimidation violated her First Amendment right to free speech. The Court of Appeals held that Rainey's conviction did not violate her First Amendment right to free speech. *Id.* at *8. Second, Rainey claimed that insufficient evidence supported her conviction for witness intimidation. The Court of Appeals agreed

2

and reversed and rendered Rainey's conviction. *Id.* at *10. Third, Rainey claimed that the circuit court abused its discretion when it sentenced her to the statutory maximum without considering the proportionality of the sentence under the Eighth Amendment. The Court of Appeals did not address this issue. *Id.*

¶4. The State filed a petition for writ of certiorari arguing that the Court of Appeals erred, that sufficient evidence sustained Rainey's conviction for witness intimidation, and that Rainey's sentence did not amount to cruel and unusual punishment under the Eighth Amendment. This Court granted certiorari.

## DISCUSSION

> I. *Did Rainey's conviction under the witness-intimidation statute violate her First Amendment right to free speech?*

¶5. The Court of Appeals ruled that "[b]ecause Rainey's speech in this instance could constitute prosecutable speech under Mississippi's statute, we cannot hold the statute unconstitutional as applied to her facts. Accordingly, we do not find that Mississippi Code Annotated [S]ection 97-9-113 as applied to her facts violated Rainey's First Amendment free-speech right." *Id.* at *18. Rainey did not challenge this ruling. Therefore, it is not before this Court and will not be addressed.

> II. *Was sufficient evidence presented to convict Rainey of the crime of witness intimidation under Mississippi Code Section 97-9-113?*

> A. *Standard of Review*

¶6. This Court reviews a sufficiency-of-the-evidence challenge de novo. ***Body v. State***, 318 So. 3d 1104, 1108 (Miss. 2021). "[T]he critical inquiry is 'whether, after viewing the

3

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (internal quotation marks omitted) (quoting *Parish v. State*, 176 So. 3d 781, 785 (Miss. 2015)). "This Court 'accept[s] as true all evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and . . . disregard[s] evidence favorable to' [the defendant]." *Barfield v. State*, 22 So. 3d 1175, 1186 (Miss. 2009) (alterations in original) (quoting *Moore v. State*, 996 So. 2d 756, 760-1 (Miss. 2008)).

### B. The Crime Charged

¶7. Under Count II, the indictment charged that Rainey

> intentionally and knowingly attempt[ed] to solicit, encourage or request a witness to provide false information intended to defeat or defend against an existing criminal charge or to hinder or interfere an ongoing investigation of criminal act, to-wit: Emma Ousley (a witness to a crime purportedly committed by Defendant) at her home at the Canton Place Apartments, by requesting Ms. Ousley to change her story that she provided to investigators so the defendant would not get in trouble[.]

Section 97-9-113(1)(d) provides that "[a] person commits the crime of intimidating a witness if he intentionally or knowingly: . . . [s]olicits, encourages, or requests a witness to provide false information intended to defeat or defend against an existing criminal charge or to hinder or interfere an ongoing investigation of a criminal act." Miss. Code Ann. § 97-9-113(1)(d) (Rev. 2020).

### C. The Evidence Admitted

¶8. The evidence established that Rainey was a City of Canton resident and employee. In March 2017, Rainey actively supported a local candidate in the upcoming Canton

4

municipal election. Rainey sought to register voters and encountered Emma Ousley at Ousley's apartment. Rainey approached Ousley's apartment and met Ousley, Marvin Cain, and a man named Red, who were drinking beers on the porch when Rainey met them.

¶9. Rainey asked if they were registered to vote. Cain said that he was not. Rainey then helped Cain and Ousley, who had recently moved and not updated her information, fill out the voter registration forms. Rainey filled out the forms, allowed Cain and Ousley to read over the answers, and then they signed the forms. Rainey then said that she would buy them a round of beer and gave $10 to Red, who went to purchase the beer.

¶10. As the election neared, Rainey again encountered Ousley. Rainey offered Ousley a ride to allow Ousley to vote by absentee ballot. After Ousley voted, Rainey gave her $10 for lunch.

¶11. In early 2018, the Madison County District Attorney's office investigated potential voter fraud associated with the May 2017 Canton municipal election. Carroll Phelps, Samuel Goodman, and Max Mayes conducted the investigation.

¶12. Mayes and Phelps contacted Ousley and questioned her about Rainey. They asked Ousley about Rainey's voter-registration visit. Based on Ousley's answers, Mayes wrote a statement, which Ousley signed, that revealed that Rainey had come to the apartments, called out for anyone who wanted to vote, and asked if anyone wanted to make some money. The statement also revealed that Rainey had given both Marvin and Ousley $10 each for a beer after she registered them.

¶13.    Shortly after Ousley spoke with investigators, Rainey confronted Ousley at her apartment complex about her statements to the investigators. The record did not mention how Rainey learned of the investigation or how Rainey knew that investigators questioned Ousley.

¶14.    At trial, Ousley testified about each of Rainey's visits to her apartment and all events related to her registration and voting. Ousley also testified about her encounter with Rainey after the investigation had begun.

¶15.    Ousley acknowledged at trial that she lied to investigators Mayes and Phelps because they made her nervous. Ousley told the investigators that Rainey gave Ousley, Cain, and Red each $10 to purchase beer after they registered to vote. Ousley corrected her statement and testified that Rainey had given them $10 to split amongst them for beer. Ousley testified that she did not tell the investigators that Rainey had given her $10 for lunch after she had voted. Ousley also said that the investigators did not coerce, intimidate, or frighten her to make a statement.

¶16.    Ousley then testified about her encounter with Rainey. Ousley said that Rainey did not intimidate her but that Rainey asked her what she said to investigators. Ousley recalled that she told Rainey that she "was going to tell the truth." However, Ousley later contradicted this statement and testified that Rainey told Ousley "to tell the truth." When Ousley was done with the conversation, she told Rainey to leave, and Rainey "just left, it wasn't no bad thing about that."

> D.    *Whether the evidence admitted was sufficient.*

¶17. Rainey was charged with a violation of Section 97-9-113(1)(d). The State had the burden to prove beyond a reasonable doubt that Rainey intentionally or knowingly "solicit[ed], encourag[ed], or request[ed]" that Ousley, a witness, "provide false information intended to defeat or defend against an existing criminal charge or to hinder or interfere an ongoing investigation of a criminal act." Miss. Code Ann. § 97-9-113(1)(d).

¶18. In the majority opinion, the Court of Appeals ruled:

> With no proof of intimidation, threats, harassment, or proof that Rainey instructed Ousley to give false statements, the verdict of the jury must be overturned. . . .
>
> But here the one witness against Rainey was Ousley who in her sworn testimony to the jury said that Rainey did not threaten or intimidate her. Nor did Rainey pressure her to give false testimony. To reiterate, Ousley repeatedly testified that Rainey told her to tell the truth. In his dissent, Judge Wilson asserts that we have overstepped our bounds in our review. He quotes *Poole v. State*, 46 So. 3d 290, 293-94 (¶ 20) (Miss. 2010), "We are not required to decide—and in fact we must refrain from deciding whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." But immediately thereafter, the supreme court in *Poole* says, "If, *on any element of the crime*, it is impossible to say that a reasonable person could have found that the State proved that element, then we must reverse and render." *Id.* (emphasis added). In this case, there is simply no credible evidence that Rainey told Ousley to give false statements in the investigation, which was a key element of the crime charged. This is one of those "exceptional cases" referred to in *Weatherspoon v. State*, 56 So. 3d 559, 564 (¶ 20) (Miss. 2011), where "the evidence preponderates heavily against the verdict." Given the proof in this record, reasonable men could not have found her guilty of witness intimidation beyond a reasonable doubt. Accordingly, we reverse and render in favor of Rainey.

*Rainey*, 2021 WL 973050, at *10 (footnotes omitted). Judge Wilson's dissenting opinion asserted:

When Rainey later learned that Ousley had talked to the investigators, she showed up at Ousley's house. Ousley testified that Rainey had never visited her house on any other occasion. According to Ousley, Rainey asked her "a lot of questions" about what she had told the investigators and wanted to know whether she had told the investigators that Rainey had given her ten dollars. On cross-examination, defense counsel asked Ousley, "[H]ow many times did [Rainey] try to tell you to change your story . . . ?" Ousley answered, "One time"—when Rainey confronted her "at [her] house."

The majority finds that Rainey is innocent by reasoning that "[i]f Rainey was trying to get Ousley to 'change her story,' it was only to change it from the lies contained in her written statement to the truth." *Ante* at ¶ 38 (footnote omitted). This improperly views the evidence in the light most favorable to Rainey. The jury was not required to accept this innocent explanation, and in a challenge to the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the State, not Rainey. ***Poole v. State***, 46 So. 3d 290, 293 (¶ 20) (Miss. 2010). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." ***Id.*** at 293-94 (¶ 20).

The majority seems to assume and accept as fact that Rainey (a) had learned all the details of Ousley's statement to the investigators and (b) confronted Ousley only to urge her to correct specific misstatements—e.g., that Rainey gave Ousley and Cain ten dollars total, not ten dollars each, when she helped them complete voter registration applications. *See ante* at ¶¶ 37-38. The jury was not required to accept this innocent explanation of Rainey's visit. Rather, there was sufficient evidence for the jury to infer that Rainey (a) knew Ousley had told investigators that Rainey had given her money in connection with her registration application and/or absentee vote and (b) confronted Ousley to get her to recant her statement in its entirety. Thus, the jury reasonably could have found Rainey guilty of asking or encouraging Ousley "to provide false information" in order to hinder the ongoing criminal investigation. Miss. Code Ann. § 97-9-113(1)(d). Accordingly, Rainey's conviction should be affirmed.

***Id.*** at *15 (Wilson, P.J., dissenting).

¶19. There was simply no basis for the Court of Appeals' ruling that "[w]ith no proof of intimidation, threats, harassment, or proof that Rainey instructed Ousley to give false

statements, the verdict of the jury must be overturned." *Id.* at *10. The Court of Appeals was in error to conclude that "intimidation, threats, [or] harassment" was required to support a conviction under Section 97-9-113(1)(d). *Id.* The statute requires that the State prove that Rainey intentionally or knowingly solicited, encouraged, or requested that Ousley provide false information intended to defeat or defend against an existing criminal charge or to hinder or interfere with an ongoing investigation of a criminal act.

¶20. Also, there is no requirement under Mississippi Code Section 97-9-113(1)(d) that Rainey successfully intimidate, threaten, or harass Ousley or any other witness. Section 97-9-113(3) provides that "[i]t is not a defense to a prosecution under this section if the actual completion . . . was prevented from occuring." Miss. Code Ann. § 97-9-113(3) (Rev. 2020).

¶21. The Court of Appeals found that "[t]his is one of those 'exceptional cases' referred to in *Weatherspoon v. State*, 56 So. 3d 559, 564 (¶ 20) (Miss. 2011), where 'the evidence preponderates heavily against the verdict.'" *Rainey*, 2021 WL 973050, at *10. The Court of Appeals held that "there is simply no credible evidence that Rainey told Ousley to give false statements in the investigation, which was a key element of the crime charged." *Id.* The Court of Appeals claimed that "reasonable men could not have found her guilty of witness intimidation beyond a reasonable doubt." *Id.*

¶22. In *Weatherspoon*, the Court considered the grant of a new trial and the overwhelming weight of the evidence, not the legal sufficiency of the evidence. *Weatherspoon*, 56 So. 3d at 563 ("Weatherspoon does not contest the legal sufficiency of the evidence."). The "exceptional cases" mentioned specifically concerned new trials and not the overwhelming

9

weight of evidence. *Id.* at 564 ("[t]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." (Internal quotation marks omitted) (quoting *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017))). Therefore, *Weatherspoon*'s "exceptional cases" do not apply here. The Court of Appeals improperly interpreted the "exceptional cases" referred to in *Weatherspoon*.

¶23.    The standard of review requires that this Court view the evidence in the light most favorable to the State and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Body*, 318 So. 3d at 1108 (internal quotation marks omitted) (quoting *Parish*, 176 So. 3d at 785).

¶24.    The evidence clearly established that Rainey went to Ousley's apartment to discuss Ousley's statements to the investigators. Ousley testified that she told Rainey that "she was going to tell the truth." Later, Ousley stated that Rainey was the one to tell her to "tell the truth." The evidence indicated that Ousley made contradicting statements. Yet the defense did not attempt to impeach her. There was no evidence as to how Rainey learned of the content of Ousley's statements to investigators. Ousley consistently claimed that Rainey asked her numerous questions about the investigation and what she told the investigators. When Rainey confronted Ousley, she had no other reason to approach her except to discuss the investigation.

¶25.    Ousley also testified that Rainey came to see her at work on "two or three" occasions but that Ousley was not there on those days. Ousley did not know why Rainey would visit

her place of work but "figured" that Rainey came to her place of work to convince her to change her story, just as she tried to do at Ousley's apartment.

¶26. From these facts, the Court of Appeals found that "the jury's conviction of witness tampering by inducing a witness to give a false statement [was] unsupported" because "Ousley repeatedly testified that Rainey told her to tell the truth." *Rainey*, 2021 WL 973050, at *9, *10. The Court of Appeals inferred that "[i]f Rainey was trying to get Ousley to 'change her story,' it was only to change it from the lies contained in her written statement to the truth." *Id.* at *9.

¶27. The State contends that the Court of Appeals incorrectly characterized "tell the truth" and that the jurors had a duty to resolve the conflict in Ousley's testimony. Rainey counters and claims that she wanted Ousley to be honest with investigators.

¶28. This Court must refrain from "actively [] evaluat[ing] the sufficiency, weight and credibility of the evidence anew—even going so far as to discredit any reliance by the jury on" Ousley's testimony. *Lenoir v. State*, 222 So. 3d 273, 279 (Miss. 2017). This Court is not in the position to decide which statements the jury was required to believe; whether Ousley told Rainey to "tell the truth" or vice versa. *Parker v. State*, 825 So. 2d 59, 66 (Miss. Ct. App. 2002) (internal quotation mark omitted) ("The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject[.]" (quoting *Henson v. Roberts*, 679 So. 2d 1041, 1045 (Miss. 1996))). Nor does this Court know which statement, by Ousley, was given greater weight by the jury. *Id.*

11

¶29. Although Rainey argues that she told Ousley to tell the truth to rectify the falsehoods she had made about Rainey's investigation, "[t]he jury was not *required* to accept this innocent explanation[.]" *Rainey*, 2021 WL 973050, at \*15 (Wilson, P.J., dissenting). "The jury has a much better vantage point to interpret witness tones, mannerisms, or dispositions." *King v. State*, 798 So. 2d 1258, 1262 (Miss. 2001). "Unlike an appellate court, which must rely on a 'cold, printed record,' the [fact-finder] hears and observes the witnesses firsthand and 'smells the smoke of the battle.'" *Knight v. Clark*, 283 So. 3d 1111, 1119 (Miss. Ct. App. 2019) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 948 (Miss. 2000)).

¶30. While the record reflects inconsistencies in Ousley's testimony, the jury found Ousley credible and chose the portions of her testimony to give greater weight, thereby supporting its conclusion of guilt as to Count II. The jury determined that sufficient evidence reasonably supported each element of the indictment and the jury instructions. "[T]he jury [is] the sole fact-finder in [this] case[,] and we do not sit as a new jury and reevaluate the evidence." *Parker*, 825 So. 2d at 66. "The jury determines the weight and credibility to give witness testimony and other evidence." *Manning v. State*, 269 So. 3d 216, 221 (Miss. Ct. App. 2018) (internal quotation marks omitted) (quoting *Gillett v. State*, 56 So. 3d 469, 505 (Miss. 2010)).

¶31. Before the start of the investigation, Rainey visited Ousley on two other occasions related to voter registration and voting. Yet, after the investigation, Rainey confronted Ousley at her home and tried to speak with her at work on at least two occasions. Ousley even said that it was unusual for Rainey to visit her home or her place of business, both of which she

had not done until recently. Given Ousley and Rainey's prior history, their limited contact, and recent encounters, there was sufficient evidence for a reasonable jury to find that Rainey encouraged or asked Ousley to provide false information to hinder or interfere with an ongoing criminal investigation. Miss. Code Ann. § 97-9-113(1)(d).

¶32.    As the dissent points out, Ousley did not explicitly testify that Rainey told Ousley to provide false information to investigators. However, to find Rainey guilty of witness intimidation, Ousley was not required to say that Rainey told her to lie to investigators. A "jury [is] free to consider [a defendant's] acts coupled with the surrounding facts and circumstances." *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019) (citing *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974)). Furthermore, "the law makes no distinction between direct and circumstantial evidence but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case." *Nevels v. State*, 325 So. 3d 627, 634 (Miss. 2021) (internal quotation mark omitted) (quoting *Mack v. State*, 481 So. 2d 793, 797 (Miss. 1985) (Robertson, J., concurring)). "[I]f the jury is convinced beyond a reasonable doubt, we can require no more." *Id.* (internal quotation marks omitted) (quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954)).

¶33.    Therefore, we cannot "view the evidence in the light most favorable to the prosecution" and say that the conviction of witness intimidation was "impossible" for a "reasonable juror" to reach. *Poole*, 46 So. 3d at 293-99. As to this issue, we reverse the

13

judgment of the Court of Appeals' and we reinstate and affirm the judgment of the circuit court.

> III.    Whether Rainey's sentence violated the Eighth Amendment right to be free of cruel and unusual punishment.

¶34.    Because this Court reverses judgment of the Court of Appeals, we must address the final issue presented by Rainey—whether her sentence amounted to cruel and unusual punishment under the Eighth Amendment. Rainey cites only *Davis v. State*, 724 So. 2d 342 (Miss. 1998), and fails to provide any analysis to support her challenge based on the Eighth Amendment.

¶35.    "Eighth Amendment challenges assert an important constitutional right, and this Court 'will indulge in every reasonable presumption against the waiver of a constitutional right.'" *Nash v. State*, 293 So. 3d 265, 267 (Miss. 2020) (quoting *Portis v. State*, 245 So. 3d 457, 474 n.15 (Miss. 2018)). "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 111 S. Ct. 2680, 115 L. Ed. 2d 869 (1991 (Kennedy, J., concurring in part and concurring in judgment)).

¶36.    The proportionality principle under the Eighth Amendment is evaluated under a three-part test from *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). *Nash* recently summarized the *Solem* factors, otherwise known as the *Solem* proportionality test:

> [T]o determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence. Only in the exceedingly "'rare case in which this threshold comparison leads to an inference of gross disproportionality'" should the court "then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions."

*Nash*, 293 So. 3d at 269 (citing *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)).

¶37. It is the defendant's burden to present evidence as to "each *Solem* factor in order for the court to determine whether the sentence is disproportionate." *Johnson v. State*, 29 So. 3d 738, 744 (Miss. 2009) (citing *Willis v. State*, 911, So. 2d 947, 951 (Miss. 2005)). Therefore, failure to address one of the *Solem* factors procedurally bars the claim. *Long v. State*, 33 So. 3d 1122, 1132 (Miss. 2010) (claim procedurally barred because the defendant failed to address any of the *Solem* factors); *Johnson v. State*, 29 So. 3d 738, 744 (Miss. 2009) (defendant "failed to present the trial court or this Court with evidence as to each *Solem* factor, and as such, this claim is barred from further review" (citing *Willis v. State*, 911 So. 2d 947, 951 (Miss. 2005))); *Willis*, 911 So. 2d at 951 (Miss. 2005) (claim dismissed for failure to address the third *Solem* factor).

¶38. Rainey's gross-disproportionality claim is barred. First, Rainey offered improper evidence as to the second factor—inquiry into sentences received by other offenders in the same jurisdiction. Rainey's brief discusses sentencing for defendants charged with voter fraud crimes rather than sentencing for the crime of witness intimidation. Rainey's brief states that the "sentences . . . imposed on Ms. Rainey far exceed the sentences and resolutions

. . . imposed on the other defendants in separate but related cases." However, the cited individuals were not charged with witness intimidation but rather voter fraud.[1] Voter fraud and witness intimidation are different crimes charged under distinct statutes. While Rainey correctly contends that her conviction was more severe, the statutory maximum sentence for voting crimes and witness intimidation are not similar. Moreover, several of the other individuals that were sentenced pled guilty.

¶39.    Next, Rainey's brief does not provide any information or statistics regarding the third factor—inquiry with similar sentences in other jurisdictions. Rainey does not cite any statutes, convictions, or any case law from other jurisdictions. As a result, Rainey is precluded from raising her Eighth Amendment challenge under **Solem**.

¶40.    Despite this bar, even if Rainey addressed the second and third **Solem** factors, her gross-disproportionality argument would still be without merit. Though not required, this Court details why Rainey's sentence was not grossly disproportionate.

¶41.    This Court has repeatedly held that "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." **Nichols v. State**, 826 So. 2d 1288, 1290 (Miss. 2002) (quoting **Wall v. State**, 718 So. 2d 1107, 1114 (Miss. 1998)); *see also* **Ellis v. State**, 326 So. 2d 466, 468 (Miss. 1976);

---

[1] Each individual that Rainey mentions was indicted for various voting crimes in relation to the May 2017 Canton municipal primaries and the June 2017 general election. Andrew Grant pled guilty to one count of conspiracy to commit voter fraud and was sentenced to five years imprisonment and five years suspended along with a fine. Donnell Robinson pled guilty to a misdemeanor on voter fraud and was required to pay a small fine. Valerie Smith pled guilty to a misdemeanor in violation of voter registration statutes; she was only required to pay a fine. The other individuals listed in her brief had charges dismissed for various reasons.

*Ainsworth v. State*, 304 So. 2d 656 (Miss. 1974). Generally, "a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992).

¶42. Rainey was sentenced to the maximum duration permitted under Mississippi Code Section 97-9-129 (Rev. 2020), which is fifteen years. Although fifteen years is a severe sentence, it does not lead to an inference of gross disproportionality because it clearly falls within the statutory limits. *Corley v. State*, 536 So. 2d 1314, 1319 (Miss. 1988).

¶43. On rare occasions, this Court has "vacated and remanded sentences even though an initial comparison of the crime and the sentence did not suggest 'gross disproportionality.'" *Ford v. State*, 975 So. 2d 859, 870 (Miss. 2008) (citing *White v. State*, 742 So. 2d 1126 (Miss. 1999); *Davis*, 724 So. 2d 342).

¶44. In both *White* and *Davis*, the Court vacated the defendants' sentences because the "judge did not use discretion in and simply opted for the maximum penalt[ies]." *Ford*, 975 So. 2d at 870 (citing *White*, 742 So. 2d at 1137-38; *Davis*, 724 So. 2d at 344). The defendants "were first-time offenders who were convicted of selling a small amount of cocaine and sentenced to the maximum term of sixty years." *Id.* (citing *White*, 742 So. 2d at 1137; *Davis*, 724 So. 2d at 343). The Court noted that "there was nothing in the record to demonstrat[e] the imposition of the maximum sentence" in either of those cases. *Id.* (citing *White*, 742 So. 2d at 1137; *Davis*, 724 So. 2d at 344).

¶45. In *Nash*, however, the defendant's sentence was upheld because the defendant's maximum sentence of twelve years for possession of a cell phone in a correctional facility

was not grossly disproportionate to the crime. *Nash*, 293 So. 3d at 270. The Court noted that the trial court reviewed the presentence-investigation report and emphasized the seriousness of the charge and considered Nash's previous felony charges. *Id.*

¶46.    In *Ford*, the Court upheld the first-time offender's conviction. The Court found that the judge used his discretion when he "denied the request for a pre-sentence investigation [and] . . . repeatedly expressed concerns about the severity of the crime. *Ford*, 975 So. 2d at 870. This Court noted that the defendant committed a violent crime and was not sentenced to the maximum penalty. *Id.* Moreover, the trial court "repeatedly expressed concerns about the severity of the crime." *Id.*

¶47.    Rainey, just like defendants in *White*, *Davis*, and *Ford*, was a first-time offender. However, in *White* and *Davis*, without justification, the court gave each defendant the maximum sentence. By contrast, Rainey's sentence was similar to that in *Ford* and *Nash* because "the trial judge did not simply opt for the maximum penalty without justification." *Nash*, 293 So. 3d at 270. Here, the circuit judge did not let Rainey waive her presentence investigation report and insisted that one be done before sentencing, unlike in *Ford*, in which the judge refused to issue a presentence investigation and report. *Ford*, 975 So. 2d at 869.

¶48.    At sentencing, the circuit judge discussed the presentence investigation and report, allowed the attorneys to offer evidence, and discussed the severity of the crime. The circuit judge considered the "good Rainey has done" in the community; however, the circuit judge was concerned with the political power she had amassed and the abuse of that power. Unlike in *Davis* and *White*, the circuit judge articulated the seriousness of the offense on the record

18

and expressed concerns as to her abuse of power with respect to witness intimidation. The circuit judge, just like in *Nash* and *Ford*, used his discretion to sentence Rainey. As stated by the circuit judge, "[w]hen you have a lot of influence and responsibility, it's your responsibility to use it [wisely]." The circuit judge emphasized the importance of criminal matters being settled within the system rather than "by going outside the system . . . and talking to people, whether that be violence, threats, influence, persuasion, and that's got to come to a stop."

¶49. Therefore, we find that Rainey's sentence was not grossly disproportionate to the crime charged. The circuit judge clearly articulated the severity of the crime and repeatedly expressed concerns for crimes that obstruct justice. This is not one of those exceedingly rare cases in which the Court should proceed with the remainder of the *Solem* factors.

## CONCLUSION

¶50. Taking into account the role of the jury as the fact-finder, as well as the evidence and testimony elicited by both parties, Rainey's verdict was legally sufficient. Additionally, Rainey is procedurally barred from raising an Eighth Amendment challenge because she failed to address two of the three *Solem* factors. Therefore, the judgment of the Court of Appeals is reversed. As to the judgment of the Circuit Court of Madison County, we reinstate and affirm Rainey's conviction and sentence for witness intimidation.

¶51. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

19

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND COLEMAN, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶52.    Respectfully, I dissent. I find that the State's evidence was insufficient because a rational juror could have found that Rainey did not solicit, encourage, or request Ousley to provide false information to the investigators, which is an essential element of the crime charged.

¶53.    Rainey contends that the State's evidence was insufficient to support the jury's verdict. "This Court has held that '[w]hen reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State.'" *Walker v. State*, 299 So. 3d 759, 764 (Miss. 2020) (alteration in original) (quoting *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019)). "If any facts or inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.'"[2] *Johnson v. State*, 81 So. 3d 1020, 1023 (Miss. 2011) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017)).

---

[2]This Court has recognized that "[a] challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence." *Thomas v. State*, 48 So. 3d 460, 469 (Miss. 2010) (citing *Fleming v. State*, 732 So. 2d 172, 183 (Miss. 1999)). Thus, I agree with the majority that the "Court of Appeals improperly interpreted the 'exceptional cases' referred to in *Weatherspoon*[*v. State*, 56 So. 3d 559 (Miss. 2011)]." Maj. Op. ¶ 22. But this Court should reverse and render on sufficiency of the evidence grounds in this case because one of the essential elements was not met.

¶54. Rainey was indicted under Mississippi Code Section 97-9-113(1)(d), which provides in relevant part:

> (1) A person commits the crime of intimidating a witness if he intentionally or knowingly:
>
> . . . .
>
> (d) Solicits, encourages or requests a witness to provide false information intended to defeat or defend an existing criminal charge or to hinder or interfere [sic] an ongoing investigation of a criminal act.

Miss. Code Ann. § 97-9-113(1)(d) (Rev. 2020). In order to convict under Section 97-9-113(1)(d), the State must prove that: (1) the defendant acted intentionally or knowingly, (2) the defendant solicited, encouraged, or requested a witness to provide false information in an ongoing criminal investigation, and (3) the information was intended to defeat or defend an existing criminal charge or to hinder or interfere with an ongoing criminal investigation. *Id.* In the present case, the State must have proven, beyond a reasonable doubt, that Rainey solicited, encouraged, or requested a witness—Ousley—to provide false information with the intent to defeat or hinder a criminal investigation.

¶55. The State's case relied solely on Ousley's testimony. Ousley did not testify that Rainey had solicited, encouraged, or requested her to provide false information to the investigators. Ousley's testimony regarding whether Rainey encouraged her to provide false information in order to hinder an ongoing criminal investigation is as follows:

> Q:   And what did she say when she approached you that time?
>
> A:   She came up to my house, she was asking me a lot of questions. I told her I was going to tell the truth.

. . . .

Q:      Didn't you say that Courtney asked you to change your story?

A:      That was before, that was before that.

Q:      I'm not talking about the timing, ma'am, I'm asking you a separate question. What did she tell you to say?

A:      She didn't tell me to say anything.

Q:      She told you to tell them folks the truth?

A:      Yes.

. . . .

Q:      Okay. So she was just telling you to tell the folks the truth?

A:      Yeah, just tell the truth.

As the Court of Appeals noted correctly, "[n]owhere in her testimony did Ousley say that Rainey had told her to lie about the money Rainey had given her as the State argues." *Rainey v. State*, No. 2019-KA-01651-COA, 2021 WL 973050, at *9 (Miss. Ct. App. Mar. 16, 2021). Did Rainey talk to Ousley? Yes. Did Rainey ask Ousley to speak to the investigators? Yes. Was that request false or intended to hinder an investigation? No. Therefore, "reasonable men could not have found beyond a reasonable doubt that [Rainey was guilty[]" of violating Code Section 97-9-113(1)(d). *Walker*, 299 So. 3d at 764 (internal quotation mark omitted) (quoting *Hughes v. State*, 983 So. 2d 270, 275-76 (Miss. 2008)).

¶56.    I agree with the majority that Section 97-9-113(1)(d) does not require the State to prove that Rainey intimidated, threatened, or harassed Ousley. *See* Maj. Op. ¶ 20. The

22

prosecutor's comments in his closing argument about intimidation were misleading,

confusing, and prejudicial. In the State's closing argument, the prosecutor said the following:

> The evidence shows that the defendant came to Emma Ousley's home months after she voted. See, there was some kind of investigation going on about some irregularities in an election, and the defendant came to see Emma Ousley once again. She came to her asking her about statements that she might have made to the investigators. No other reason whatsoever for the defendant to come back and visit with Emma Ousley, but she came there to inquire about what's going on and what she told the investigators. And you can infer from the circumstances that she was there to intimidate her. The law says if you attempt to get a witness to provide false information to defeat a criminal charge, or intended to interfere or hinder an ongoing investigation. You see, Ms. Rainey here, is worried that Emma Ousley told these people that she was paid money. Now, Emma told you, upon being questioned, were you intimidated by her. And she said, no, I wasn't intimidated. But the law doesn't require that the defendant succeed in the crime. Just because she didn't succeed in getting Ms. Ousley to admit she was intimidated doesn't mean she's not guilty. It is the attempt to intimidate that makes her guilty in this particular case. Because if you attempt and still fail, you're still guilty.

The prosecutor's references to intimidation when Section 97-9-113(1)(d) does not require

intimidation were misplaced, and they were misleading. If it was the State's intention to

pursue this theory, it should have sought to indict Rainey under Mississippi Code Section

97-9-113(1)(b), which does not require the essential element of providing false information

to hinder an ongoing criminal investigation. *See* Miss. Code Ann. § 97-9-113(1)(b) (Rev.

2020) ("A person commits the crime of intimidating a witness if he intentionally or

knowingly: . . . [h]arasses or intimidates or attempts to threaten, harass or intimidate a

witness or a person reasonably expected to be a witness[.]"). Instead, "[t]he State chose to

prosecute Rainey for instructing Ousley to give false statements to investigators, not for

threatening or intimidating Ousley." ***Rainey***, 2021 WL 973050, at *10. An essential element

of Section 97-9-113(1)(d) is that the defendant solicit or encourage the witness to provide false information in order to hinder the investigators and, looking at the record in the light most favorable to the State, the prosecution adduced no evidence that satisfied, beyond a reasonable doubt, all of the elements of Section 97-9-113(1)(d).

¶57. The majority finds sufficient evidence by assuming a reasonable jury would find that Rainey encouraged Ousley to provide false information to hinder a criminal investigation "[g]iven Ousley and Rainey's prior history, their limited contact, and recent encounters[.]" Maj. Op. ¶ 31. But the majority is "actively reevaluat[ing] the sufficiency, weight, and credibility of the evidence anew[.]" *Lenoir v. State*, 222 So. 3d 273, 279 (Miss. 2017). This is at odds with our holding in *Poole v. State*, that

> [w]e are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did. If, on any element of the crime, it is impossible to say that a reasonable person could have found that the State proved that element, then we must reverse and render.

*Poole v. State*, 46 So. 3d 290, 293-94 (Miss. 2010). The majority speculates about past interactions of Rainey and Ousley and the importance those interactions could have to a reasonable jury. But past interactions of these two people cannot overcome the complete absence of proof that Rainey encouraged or requested Ousley to provide false information to the investigators, an essential element of the crime charged. Actually, Ousley's trial testimony contradicts the majority's assumptions because Ousley testified that, at their recent encounters, all Rainey asked of her was to "tell the truth."

24

¶58.   The majority maintains that, "[a]lthough Rainey argues that she told Ousley to tell the truth to rectify the falsehoods she had made about Rainey's investigation, 'the jury was not *required* to accept this innocent explanation[.]'" Maj. Op. ¶ 29 (second alteration in original) (quoting **Rainey**, 2021 WL 973050, at *15 (Wilson, P.J., dissenting)). It is true that "[t]he jury determines the weight and credibility to give witness testimony and other evidence[,]" **Gillett v. State**, 56 So. 3d 469, 505 (Miss. 2010) (citing **Massey v. State**, 992 So. 2d 1161, 1163 (Miss. 2008)), but no reasonable jury could have found that the State had proved an essential element of the crime, *i.e.*, that the defendant had solicited, encouraged, or requested a witness to provide false information intended to defeat or hinder a criminal investigation. *See* **Johnson**, 81 So. 3d at 1023 (quoting **Bush**, 895 So. 2d at 843). Ousley did not testify that Rainey had told her to provide false information. Ousley testified consistently that Rainey told her to "tell the truth." Rainey never asked Ousley to lie for her. To the contrary, Rainey repeatedly admonished Ousley to be truthful. The State provided no evidence to the contrary.

¶59.   An indispensable element of Section 97-9-113(1)(d) is that the witness be encouraged or asked to give false information intended to defeat or hinder a criminal investigation. The record is altogether devoid of evidence that Rainey asked or encouraged Ousley to speak falsely, either in or out of court. Even viewing the evidence in the light most favorable to the prosecution, the State failed to adduce a shred of evidence that Rainey had solicited, encouraged, or requested Ousley to give investigators information that was false or a hindrance to their voter fraud investigation. Because the facts do "point in favor of [Rainey] on [an] element of the offense with sufficient force that reasonable men could not have found

25

beyond a reasonable doubt that the defendant was guilty," *Johnson*, 81 So. 3d at 1023 (internal quotation mark omitted) (quoting *Bush*, 895 So. 2d at 843), I would reverse and render Rainey's conviction.

**KING, P.J., AND COLEMAN, J., JOIN THIS OPINION.**