# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-00754-SCT

*LADARRIUS GARRETT a/k/a LADERIUS GARRETT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2021 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | RICHARD B. LEWIS |
| | BRENDA FAY MITCHELL |
| | ROSHARWIN LEMOYNE WILLIAMS |
| | STEPHANIE ALEXIS BROWN |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON KAY HARTMAN |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/11/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Ladarrius Garrett appeals from his conviction of burglary of a hotel room following a jury trial in the Tunica County Circuit Court.  He claims his conviction is not supported by sufficient evidence and that the jury's guilty verdict is contrary to the overwhelming weight of the evidence.  Finding no merit to either claim, we affirm Garrett's burglary conviction.

# FACTS

¶2.    In May 2018, C.L.[1] and her family were staying at the Horseshoe Tunica Hotel and Casino to celebrate her younger sister's graduation from high school. C.L. and Dominique Ingram, a family friend, stayed in room 3157 on the hotel's third floor.

¶3.    Around midnight the evening the family had checked into the hotel, C.L. decided to go to bed because she had a headache. Ingram, who had his own key, left the room at that point to go downstairs to the casino and gamble. C.L. testified that Ingram was "in and out" of the room throughout the evening and that the door to the room was closed each time after he left the room.

¶4.    As C.L. was sleeping, she awoke to a "weird feeling" in between her legs. She said it felt like a finger around her "anus area and [her] vaginal area." Not knowing what was happening, C.L. reached for her glasses on the night stand and turned on the light. C.L. saw a naked man, whom she had never seen before, standing beside her bed. She testified that "he was rubbing his penis, erect penis saying, 'Suck this d***. Touch this d***.'"

¶5.    C.L. panicked and immediately jumped out of bed, saying to the man, "[W]ho are you? How did you get in here? What is going on?" C.L. said the man just stood there, "still rubbing himself."

¶6.    At that point, Ingram entered the hotel room. Ingram asked, "What is going on?" C.L. told Ingram, "I don't know this person. Who is this person?" She said the man then pulled up his pants and grabbed a pizza box off of Ingram's bed and walked out of the room.

---

[1] Initials are used in this case for this individual's identity due to the sexual nature surrounding the alleged crime.

As the man was leaving, C.L. heard the man ask Ingram, "Is this your joint?"

¶7.     C.L. then called her parents and hotel security.  C.L. later identified Garrett as the naked man in her room.

¶8.     According to the evidence, which included video surveillance from the hotel's security cameras, Garrett had checked into the hotel with another man and woman earlier that evening.  Garrett stayed in room 3151 on the same floor as C.L.'s room.

¶9.     The video evidence showed Garrett at various parts of the casino and the hotel throughout the evening.  Around 1 a.m., Garrett purchased food from a restaurant located inside the casino and took it to his room.  Garrett exited the room approximately twenty minutes later and took the elevator down to the casino.  He went back to the same restaurant and purchased a pizza.  Afterwards, he got back on the elevator carrying a pizza box and took the elevator to the eighth and seventh floor.  He briefly walked around each floor in an apparent attempt to find his room before returning to the third floor.

¶10.    After he returned to the third floor, video evidence showed Garrett walk past his room and stop briefly at one of the next rooms before apparently realizing it was the wrong room.  Garrett  proceeded down the corridor away from his room and stopped momentarily in front of the next room, which was C.L.'s room.  Garrett then continued down the corridor a few steps, turned around and walked back toward C.L.'s room.  He again paused momentarily in front of the room and then proceeded back down the corridor for a few steps before turning around and walking back to C.L.'s room.  Garrett entered C.L.'s room and exited about twenty seconds later.  He walked down the corridor toward his room; he stopped in front of

3

his room and then walked back toward C.L.'s room. He entered C.L.'s room a second time and exited the room shirtless approximately three minutes later after Ingram had entered the room.

¶11.   Garrett was indicted on one count of attempted sexual battery and one count of burglary of a hotel room. A jury trial was had on both counts. Garrett did not testify at trial, and he presented no witnesses. The jury found Garrett guilty of burglary and not guilty of attempted sexual battery. Garrett filed a post-trial motion challenging the sufficiency of the evidence and the weight of the evidence, which the trial court denied. Garrett appeals.

## DISCUSSION

¶12.   In reviewing a challenge to the legal sufficiency of the evidence in a criminal matter, this Court considers whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Body v. State*, 318 So. 3d 1104, 1108 (Miss. 2021) (internal quotation marks omitted) (quoting *Parish v. State*, 176 So. 3d 781, 785 (Miss. 2015)). We view all of the evidence in the light most favorable to the prosecution, accept all the evidence supporting the verdict as true, and give the prosecution the benefit of all favorable inferences that reasonably may be drawn from the evidence. *Id.*

¶13.   In reviewing a challenge to the weight of the evidence, this Court will not disturb the jury's verdict unless it appears to be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Willis v. State*, 911 So. 2d 947, 950 (Miss. 2005) (citing *Stewart v. State*, 909 So. 2d 52, 57 (Miss. 2005)).

**Sufficiency of the Evidence**

¶14. Garrett claims the evidence was insufficient to prove he committed a breaking by entering C.L.'s room. He also claims the evidence was insufficient to prove that he entered C.L.'s room with the intent to commit sexual battery.

¶15. To prove burglary in this case, the State had to demonstrate: (1) breaking and entering a private room (hotel room) (2) with intent to commit the crime of sexual battery, as alleged in the indictment. Miss. Code. Ann. § 97-17-33(1) (Rev. 2020). "By breaking is meant any act of force, regardless of how slight, necessary to be used in entering the [room]—a turning of the knob, a slight push to further open a door, the raising of a latch—these and like acts are sufficient." *Gross v. State*, 191 Miss. 383, 2 So. 2d 818, 820 (1941).

¶16. Garrett argues that no evidence was presented showing that the door to C.L.'s room was closed when he entered the room. He contends that C.L. testified that she had assumed the door was closed because it was closed when she went to sleep. But Garrett claims this is conjecture since C.L. was sharing a room with Ingram, who C.L. said was "in and out" of the room that night. Garrett contends that C.L. admitted that she had no way of knowing whether the door was opened or closed when Garrett entered the room because she was asleep at the time. Garrett further contends that the surveillance video submitted at trial did not show the door to C.L.'s room and that what it did show was that Garrett entered the room easily and quickly without a pause that would be expected when using a key or other tool to gain entry.

¶17. Garrett also argues that reasonable doubt remains that Garrett mistook C.L.'s room for his and that he mistook C.L. for the woman who was staying in his room. He contends

5

that the video evidence shows that he had trouble finding his room and that he wandered the third-floor corridor in apparent confusion over which room was his.

¶18. Garrett is correct that C.L. testified that she did not know how Garrett entered the room, and she could not say for certain that the door was closed when Garrett entered the room since she was asleep at the time. Garrett also is correct that the video surveillance did not show the door to the room because the rooms are set back a foot or two off the corridor. But we find that the State still presented sufficient evidence from which a juror could rationally conclude that Garrett pushed open the door to C.L.'s room.

¶19. C.L. testified that the door was closed when Ingram left the room to go down to the casino and that it was closed when she went to sleep. She also said that there was a "lock issue" with the door earlier in the day and that the door "may not have closed behind itself." Even though the door itself was obscured from view of the camera, the video showed Garrett right in front of the door before he entered C.L.'s room the first time.

¶20. While holding the pizza box in his right hand, Garrett reached out slightly with his left arm in a pushing motion before entering the room. When he exited the room a few seconds later, the video showed Garrett pause at the door; he again had the pizza box in his right hand, and he appeared to slowly pull his left arm back from the door.

¶21. When Garrett returned to C.L.'s room the second time, he was still holding the pizza box in his right hand. He again paused briefly at the door and then reached out with his left arm in yet another pushing motion before entering the room.

¶22. From this evidence, the jury could reasonably infer that the door to C.L.'s room was

closed, though it may not have been closed all the way or latched. The jury also could reasonably infer from Garrett's movements in front of the door, as depicted from the video evidence, that he had to push the door open to gain entry. Thus, the evidence submitted sufficiently satisfied the breaking requirement of the burglary statute at issue in this case.

¶23. As to the intent requirement, the evidence showed that Garrett twice entered C.L.'s room—possibly by mistake the first time, but not by mistake the second time. After exiting the room the first time, Garrett walked back to his room. He stood outside the door to his room for a moment then turned around and walked back to C.L.'s room. As he walked toward the door, Garrett fumbled around the front of his pants with his left hand. While he was in C.L.'s room, C.L. felt Garrett's fingers around her private parts. She testified that Garrett tried to insert his fingers into her vaginal area but that he did not fully penetrate her. When C.L. jumped out of bed and yelled out at Garrett, Garrett, who was naked, continued to touch himself until Ingram entered the room.

¶24. Based on all of the evidence presented, the jury could reasonably infer that Garrett broke and entered C.L.'s room with the intent to commit the crime of sexual battery. Accordingly, we find that Garrett's sufficiency-of-the-evidence claim is without merit.

**Weight of the Evidence**

¶25. Garrett submits that the overwhelming weight of the evidence indicates that he was confused over which room was his and that he mistakenly determined that C.L.'s room was his and that C.L. was the woman he came to the casino with.

¶26. We agree that the evidence shows that Garrett did in fact appear confused at times as

7

to which room was his. But the evidence also shows that was no longer the case after Garrett entered and exited C.L.'s room the first time.

¶27. As mentioned, after Garrett exited C.L.'s room the first time, Garrett walked back toward his room, stood in front of it for a moment, and then returned to C.L.'s room. The jury could fairly conclude from the evidence that Garrett knew C.L.'s room was not his and that Garrett did not mistake C.L. for the woman with whom he had checked into the hotel.

¶28. Garrett alternatively submits that the evidence also could indicate that C.L. was expecting Garrett, and that, to avoid her family's finding out that she had a sexual encounter on the casino trip, she acted like she did not know Garrett when Ingram came into the room and discovered C.L. with a naked man.

¶29. Based on our review of the record, no evidence was presented to support this scenario. Moreover, C.L.'s testimony and credibility were for the jury to weigh and consider. *Miller v. State*, 983 So. 2d 1051, 1054 (Miss. 2008).

¶30. Accordingly, we find no merit to Garrett's weight-of-the-evidence claim.

## CONCLUSION

¶31. We affirm Garrett's burglary conviction.

¶32. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**